[No. 4179.]

## THE CITY OF DENVER ET AL. V. HAYES ET AL.

1. CITIES AND TOWNS—CREATING INDEBTEDNESS—SUBMISSION TO ELECTORS.

Under the constitution and statutes prohibiting cities and towns from creating any indebtedness until it has been voted in favor of by the electors thereof and enumerating several purposes for which such indebtedness may be contracted, an election at which all the several purposes enumerated and the amount of indebtedness to be created are submitted as one proposition so that the electors must vote for or against them as a whole, is invalid, and bonds issued thereunder are void. Only one purpose for which the indebtedness is to be created should be submitted at one time, or if more than one is submitted they should be submitted as separate propositions with the several amounts of indebtedness proposed for each, so that an elector can vote for any one or more of the propositions he may favor and against such as he opposes.

2. INTEREST—DEPOSIT FOR INVALID CITY BONDS.

Where the successful bidders for an issue of city bonds made a deposit as a bonus and the bonds proving to be invalid the bidders demanded the return of their deposit, they are not entitled to interest on such deposit after the date of such demand.

*Appeal from the District Court of Arapahoe County.*

Mr. J. M. ELLIS, City Attorney, Mr. GUY LEROY STEVICK, Mr. S. L. CARPENTER and Mr. N. B. BACHTELL for appellants; Mr. F. A. WILLIAMS, Mr. GEORGE F. DUNKLEE and Mr. JAMES H. BROWN of counsel.

Messrs. BICKSLER, McLEAN & BENNETT and Mr. THOMAS W. HEATLEY for appellees.

*Appeal from the District Court of Arapahoe County.*

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

The ultimate object of this action is to test the validity of

an issue of so-called Auditorium bonds of the city of Denver aggregating $400,000.  Appellees, who were the successful bidders, therefor, accompanied their bid by depositing with the city treasurer $8,300 as evidence of their good faith, which, if their bid was accepted, was to be applied on the purchase price.  Discovering, as they say, the invalidity of the bonds after the deposit was made, they brought this action to recover the same when the city refused to refund it. It is a friendly action, but the controversy is real, and the pleadings are so framed as to demand a decision of the question argued.

The constitutional and statutory provisions which control are section 8 of article 11 of the constitution and sections 154 and 156 of the charter of the city of Denver, the former of which is found in session laws of 1893, p. 200, Sec. 9; the latter in session laws of 1899, pp. 371-2.  The sections, excluding words superfluous in this discussion, are:—

"No city or town shall contract any debt by loan in any form, except by means of an ordinance . * * * specifying the purposes to which the funds to be raised shall be applied.  * * *  But no such debt shall be created unless the question of incurring the same shall at a regular election for councilmen, aldermen or officers of such city or town, be submitted to a vote of such qualified electors thereof as shall, in the year next preceding, have paid a property tax therein, and a majority of those voting on the question, by ballot deposited in a separate ballot box, shall vote in favor of creating such a debt.  * * * "  Const. Art. 11, Sec. 8.

"No loan shall be made and no bonds shall be issued for any purpose except in pursuance of an ordinance authorizing the same;  * *  and such ordinance shall specify the purposes for which the sums to be raised shall be appled;  * * *  but no such debt shall be created nor bonds issued unless the question of incurring the same and issuing bonds

therefor shall be submitted to the vote of such of the qualified electors of the city as shall in the next year preceding have paid a property tax therein, and a majority of such voting upon the question by ballot shall vote in favor of creating such debt and issuing such bonds." Session laws 1893, p. 200, Sec. 9.

"The city council is hereby authorized to contract an indebtedness on behalf of the city, and upon the credit thereof, by borrowing money and issuing bonds of the city at a rate of interest not exceeding five (5) per cent. per annum.

(a) For the purpose of erecting public buildings, including a public auditorium.

(b) For the purpose of constructing and maintaining public sewers for the city.

(c) For the purpose of purchasing lands for parks and public squares within or without the city limits, and for the purpose of condemning sites for parks and public squares, and the assessments of benefits for the same and for sites for public buildings for said city.

(d) For the purpose of improving existing parks.

(e) For the purpose of building and constructing viaducts for the city, or aiding in the building or construction thereof.

(f) For the purpose of constructing reservoirs within or without the city limits, for the storage of water to be used in irrigating the trees in said city, and for sanitary or domestic purposes in said city, and to acquire lands for such reservoirs.

(g) For the purpose of constructing bridges and their approaches.

(h) For the purpose of taking up, paying, redeeming and refunding any bonded indebtedness of the city, or any part thereof.

(i) For the purpose of improving the banks and channels of South Platte river, and for acquiring a right of way for a new channel for Cherry Creek, and for turning the same,

(*j*) For the purpose of constructing and purchasing a channel or channels, or ditches, or conduits, or some suitable system of supplying waters in the city.

(*k*) For paying the city's proportion of any local improvements, whereby this act any part of the cost thereof is to be paid by the city. Said indebtedness and bonds for all said purposes, together with all general indebtedness and bonds of the city previously issued, not to exceed in the aggregate the amount limited by the constitution of the state of Colorado." Session laws 1899, pp. 371-2.

The city council passed ordinance No. 31 of the series of 1899 which provided for submission at the regular municipal election of that year to the vote of the qualified electors of the city the question of incurring an indebtedness in behalf of the city of $400,000 for the eleven separate and distinct purposes above classified from "A" to "K." The form of the ballot as therein prescribed requires each elector to designate by a cross-mark in the margin of the ballot his answer to the questions submitted. They were two, or rather the question was only one, but in the alternative: For incurring, and against incurring, the indebtedness. The eleven separate and distinct purposes were so grouped in one proposition that an elector desiring to vote for any one purpose was, to accomplish it, obliged to vote for all collectively, though he might favor one only, and be against the others; and, if he wished to vote against any one purpose, though he might not object to any of the others, he must vote against all. In other words, he was not permitted to vote for one or more of the separate purposes and against the others, but he must vote for all, against all, or not vote at all.

A majority of the electors voted in favor of incurring the indebtedness and issuing the bonds. After the vote was taken and canvassed and the result declared, the city council proceeded to enact ordinance No. 67, series of 1899, whereby it assumed to create an indebtedness in the sum of $400,000

and to issue bonds therefor, and out of the proceeds received from their sale it was proposed to set aside one-eighth as a park fund (the charter elsewhere providing that one-eighth of all proceeds from bonds voted should be so applied) and seven-eights to the building of a public auditorium.

There are four particulars in which the bonds are said to be invalid, In the view we take of the controversy it is necessary to consider only one. It is the contention of plaintiffs that the bonds are invalid because ordinance No. 31, providing for ascertaining the will of the voters, and the election called in pursuance thereof, were invalid in that the ordinance and the notice for the election and in the form of the ballot to be used eleven separate purposes were included as one proposition to be voted upon, and electors were not able understandingly to cast their ballot.

Defendants, on the other hand, contend that several pur. poses may be submitted as a single proposition at the same election, and if a majority of the qualified electors authorize the creation of an indebtedness in a lump sum, this is a due observance of the regulations prescribed by law, and the council may thereafter, by ordinance, apportion among the different purposes the proceeds of the bonds as it sees fit, or may apply them exclusively (less one-eighth for parks) to one purpose.

A careful examination of the constitutional and statutory provisions involved will disclose that they are harmonious. Indeed, they are substantially the same. The precise question for determination, therefore, is not whether the legisla- tive enactments are constitutional,—though by necessary deduction that point is also ruled upon,—but whether the city council in its proceedings leading up to the issue of these bonds has observed the provisions of the charter.

That the action of the city council was fundamentally wrong we have not the slightest doubt. The purpose of the framers of the constitution, which they expressed in the

section under consideration, and the object of the general assembly which is embodied in the city charter, were to prohibit municipal authorities from creating a debt for municipal purposes and from issuing bonds unless a majority of the legal electors of the city gave their consent thereto. By the proceedings under review no opportunity was given by the city council to the electors to express their will as to incurring a debt for any particular purpose. and the voice of the electors has never been heard. Neither the constitutional limitation nor the statutory provisions expressly declare that only one purpose may be submitted at the same election, nor that, if more than one purpose may thus be submitted, each shall be separately stated. But the object of neither can be attained, and effect to the language in which they are expressed cannot be given, unless such purposes be separately stated, and the amount proposed to be applied to each particular purpose designated. This must be done, not only in the ordinance which provides for the submission, but in the election notice; and the ballots must be so prepared that every elector may declare his choice as to each purpose, and the amount proposed to be applied thereto must, also, be stated.

To combine several distinct and independent purposes into one proposition without specifying the amount which is to be devoted to each, is a clear evasion of the law. and, if permitted, would fritter away the safeguards thrown around such transactions. As already indicated, under the provisions of ordinance No. 31, and in the form of the ballot as therein prescribed, an elector has three alternatives; *first,* to vote for all purposes collectively; *second,* to vote against all of them collectively; *third,* to abstain from voting. If he wants to vote for one or more, and against the others he is not able to do it.

Voting for all combined is not voting for any one or more separately; and so the fact that a majority of the legal votes

was cast for the eleven purposes enumerated in ordinance No. 31 and in the notice of election is not equivalent to a majority for any one of the eleven independent purposes. If such a proceeding can be tolerated as was attemped by the city council, then if an aggregate indebtedness of eleven mil-million dollars is authorized by the electors of the city for the eleven purposes enumerated, the city council, after deducting from the sale of bonds one-eighth of the proceeds and applying the same for park purposes which the charter requires, might devote the remainder to the single purpose of constructing bridges, or improving existing parks, or improving the banks or channels of the Platte river. In fact, that is just what, in principle, was done in this instance when seven-eighths of the proceeds of the bond sale were devoted to the erection of a public auditorium.

By combining the advocates of each of the eleven propositions submitted a majority of the votes was secured, but by the procedure adopted it is impossible to ascertain whether a majority of the electors was in favor of any one of the propositions submitted.

So far as the question before us is concerned, it makes no difference whether we hold that only one purpose may thus be voted upon, or that two or more may be combined and submitted at the same election. It would seem under the decisions of other courts under constitutions and statutes somewhat similar to ours that the better rule is to submit only one such question at a time. By statute in some of the states it is expressly provided that two or more such propositions may be combined, but if they are, each must be separately stated, and an opportunity given the electors to vote upon each purpose separately. Tho electors must have the right, which is theirs alone, of separately determining each purpose for which a debt shall be created and what amount shall be applied thereto. It is not sufficient that a lump sum be authorized by the electors, which the city

council may thereafter apportion as it sees fit, but the separate purpose and amount devoted to each must be determined by them.

Not a single authority has been cited by the city attorney in support of the construction which we are asked to sanction, but he says that there are no similar constitutional and statutory provisions in other states on which a decision might be expected. This may be true, but there are several decisions which we consider, in principle, to be squarely against his contention. He cites, however, the case of *Thomas v. Grand Junction*, 13 Colo. App. 80, as authority for the proposition that an ordinance which authorizes the purchase or construction of water works is not void on account of including two subjects. But the court there expressly ruled that the one subject and one object of the ordinance under consideration was to secure for the city the ownership of its own water works. "It authorizes the purchase *or* construction, not the purchase *and* construction." This language impliedly recognizes the rule that if there had been more than one purpose included, the ordinance would be void. Whether the distinction made is sound we do not say. But nothing in that case decided is against the conclusion which we have reached, but, if there is, it must give way to the ruling here. The following, among other, cases are in harmony with our resolution of the question under consideration. *Gas & Water Co. v. City of Elyria*, 57 Ohio St. 374; *Truelsen v. City of Duluth*, 61 Minn. 48; *Metcalfe v. Seattle*, 1 Wash. 297; *Petros v. Vancouver*, 13 Wash. 423; *Supervisors v. N. & W. R. R. Co.*, 21 Ills. 338, 372; *Gray et al. v. Mount et al.*, 45 Iowa, 591.

Under the laws of Iowa it was provided that upon an affirmative vote of the people at any general or special election upon the proposition submitted to them, certain land or proceeds arising from its sale might be devoted to the erection of county buildings and buildings devoted to the pur-

pose of eaucation. The question submitted was whether the funds in question should be devoted to the erection of a court house and a county high school. Speaking to the objection that such a submission was invalid because there was a union of two objects and two separate appropriations for distinct objects in one proposition so that the elector could not vote for one and against the other, the court, in the case of *Gray et al. v. Mount et al., supra,* speaking by Mr. Justice Beck, said:

"The question to be submitted to the voters was not simply whether it was their will to appropriate the fund; but there must be an *object* for the appropriation in order to constitute the proposition to be voted upon. The object is of the essence of the proposition. This cannot be denied. The appropriation for a given object is the proposition submitted. If there be two objects and a specified amount of funds to be devoted to each, it is very plain that there are two propositions submitted at the same election. If they are submitted together, it is very clear that the voter cannot vote for one and against the other. He must vote against both, whereby he may defeat one, the success of which he desires, or he must vote for both, whereby he may cause the success of one which he desires to be defeated. If he fails to vote he may thus aid in causing the defeat of his favorite measure, and the adoption of the one he opposes. He has thus no liberty of choice. The plan of submitting the questions, for there are two, resembles more the common device of an auctioneer in disposing of worthless goods, whereby a good article is mingled with them and made to draw bids, or the cunning tricks of gamesters to induce wagers of the unwary, rather than the open, direct and fair manner that always should prevail in elections by the people. The very letter as well as the spirit of our election laws condemns this plan. It has never been heard of that electors were, by any plan, denied the right of choosing one, and rejecting another

candidate for office, to be voted for at the same election."

We have made the foregoing excerpt because it so clearly and concisely presents the reasons for holding invalid the proceedings of the city council in submitting to the electors of the city of Denver the proposition of creating a debt for eleven distinct and independent purposes without giving to the voter an opportunity to express his will as to any one of them.

The cross-error assigned by appellees that the trial court was wrong in refusing to allow interest on the deposit from the date of the demand on the city to return it, is resolved against them. This is not a case for the award of interest.

The judgment of the district court being in accordance with our conclusion, it is affirmed.

*Affirmed.*