In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 2005–2006 # 73,

Petitioners: Beverly Ausfahl and Nicole Kemp, objectors,

and

Respondents: Jon Caldara and Dennis Polhill, proponents,

and

Title Board: William A. Hobbs, Allison Eid, and Daniel L. Cartin.

No. 06SA42.

Supreme Court of Colorado, En Banc.

May 22, 2006.

Isaacson Rosenbaum, P.C., Edward T. Ramey, Denver, for Petitioners.

No appearance on behalf of Jon Caldara and Dennis Polhill, Proponents.

John W. Suthers, Attorney General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Public Officials Unit, Denver, for Title Board.

RICE, Justice.

Petitioners Beverly Ausfahl and Nicole Kemp (Petitioners) brought this original proceeding under section 1–40–107(2), C.R.S. (2005), to review the action of the Title Board (Board) in fixing a title, ballot title and submission clause, and summary (titles and summary) for a ballot initiative (Initiative # 73) for the 2006 general election. The Petitioners contend that Initiative # 73 addresses multiple subjects in violation of article V, section 1(5.5) of the Colorado Constitution. We affirm the action of the Title Board.

## I. Facts

Initiative # 73 seeks to amend article X, section 20 of the Colorado Constitution (Amendment 1) by adding a new subsection primarily directed at eliminating what the Proponents describe as "pay-to-play" contributions—that is, contributions made to issue committees supporting Amendment 1 ballot measures by persons who might stand to gain any form of direct or indirect benefit from the passage of the measure.

The Title Board conducted its initial public meeting and set a title, ballot title, and submission for the proposed Initiative. Petitioners filed a Motion for Rehearing, objecting that the proposed initiative contained multiple subjects. The Motion for Rehearing was heard at the next regularly scheduled meeting of the Title Board. At the rehearing, the Title Board overruled Petitioners' objection. Petitioners then sought review in this court.

## II. Law

### A. The "Single–Subject" Provision

■ This case involves the application of the single-subject limitation to initiatives.[1] Despite our limited role,[2] we have been asked on numerous occasions to determine whether or not a proposed initiative contains a single subject. To this end, we have developed principles by which we review the decisions of the Title Board,[3] with whom the responsibility resides to initially review all proposed initiatives.[4] Primary among these principles is the axiomatic concept that, in order to pass constitutional muster, a proposed initiative must concern only one subject—that is to say it must effect or carry out only one general object or purpose.[5]

■ To evaluate whether or not an initiative effectuates or carries out only one general object or purpose, we look to the text of the proposed initiative. The single subject requirement is not violated if the "matters encompassed are necessarily or properly connected to each other rather than disconnected or incongruous." *In re Amend Tabor 25*, 900 P.2d 121, 125 (Colo.1995); *see In re "Public Rights in Waters II"*, 898 P.2d 1076, 1078–79 (Colo.1995). Said another way, the single subject requirement is not violated unless the text of the measure "relates to more than one subject and has at least two distinct and separate purposes which are not dependent upon or connected with each other." *In re Petition Procedures*, 900 P.2d 104, 109 (Colo.1995); *see People v. Sours*, 31 Colo. 369, 405, 74 P. 167, 178 (1903).

■ Mere implementation or enforcement details directly tied to the initiative's single subject will not, in and of themselves, constitute a separate subject. Finally, in order to pass the single-subject test, the subject of the initiative should be capable of being clearly expressed in the initiative's title.[6]

1. The General Assembly sought to extend the single-subject/clear title limitation applicable to bills to proposed initiatives by way of a referred constitutional amendment. The language of the proposed amendment mirrored the language of article V, section 21 of the Colorado Constitution insofar as it sought to prohibit initiatives from containing more than a single subject, which must be expressed clearly. The General Assembly referred this constitutional amendment to the voters as "Referendum A" on the 1994 general election ballot. It was approved and became effective upon proclamation by the Governor on January 19, 1995. *In re "Public Rights in Waters II"*, 898 P.2d 1076, 1078 (Colo.1995).

2. We may not address the merits of a proposed initiative or suggest how an initiative might be applied if enacted; however, we must sufficiently examine an initiative to determine whether or not the constitutional prohibition against initiative proposals containing multiple subjects has been violated. *In re Proposed Initiative for 1999–2000 # 29*, 972 P.2d 257, 260 (Colo.1999).

3. In reviewing the Board's actions setting the title, ballot title and submission clause, and summary, "we will engage in all legitimate presumptions in favor of the propriety of the Board's actions." *In re Petition Procedures*, 900 P.2d 104, 108 (Colo.1995). At the same time, "we must sufficiently examine an initiative to determine whether or not the constitutional prohibition against initiative proposals containing multiple subjects has been violated." *In re 1997–98 # 84*, 961 P.2d 456, 458 (Colo.1998); *In re 1997–98 # 30*, 959 P.2d 822, 825 (Colo.1998).

4. In order to facilitate the initiative process, the *General Assembly assigned duties to the Title* Board which include: (1) "designat[ing] and fix[ing] a proper fair title for each proposed law or constitutional amendment, together with a submission clause," § 1–40–106(1), C.R.S. (2005); (2) "consider[ing] the public confusion that might be caused by misleading titles and … whenever practicable, avoid[ing] titles for which the general understanding of the effect of a 'yes' or 'no' vote will be unclear," § 1–40–106(3)(b); (3) not permitting "the treatment of incongruous subjects in the same measure," § 1–40–106.5(1)(e)(I); and (4) acting to "prevent surreptitious measures and appris[ing] the people of the subject of each measure by the title" in order to "prevent surprise and fraud from being practiced upon voters," § 1–40–106.5(1)(e)(II). Section 1–40–106.5(3) provides that "the initiative title setting review board created in section 1–40–106 should apply judicial decisions construing the constitutional single-subject requirement for bills and should follow the same rules employed by the general assembly in considering titles for bills." *See In re Proposed Initiative 1996–4*, 916 P.2d 528, 532 (Colo.1996).

5. *See In re Amend Tabor 25*, 900 P.2d 121, 125 (Colo.1995); *In re Petition Procedures*, 900 P.2d 104, 109 (Colo.1995); *In re "Public Rights in Waters II"*, 898 P.2d 1076, 1079 (Colo.1995).

6. *See* Colo. Const. art. V, § 1(5.5); *see also* § 1–40–106.5, C.R.S. (2005) ("No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title…. If a measure contains more than one

## B. The Enforcement Provision is Not a Separate Subject

The proponents of this initiative assert, and the Title Board agrees, that the text of this initiative contains only one general subject—contributions made to Amendment 1 issue committee campaigns with the expectation of receiving a reward from a governmental entity. Petitioners claim, however, that instead of containing one unified, general subject, this initiative contains at least three distinct, unconnected topics, namely: (a) a restriction upon the ability of governmental districts to provide any form of economic or business benefit to persons who have contributed more than $500 to an issue committee that supported an Amendment 1 ballot measure for that district; (b) a prohibition of "pass-through" contributions to Amendment 1 committees generally; and (c) a retroactive invalidation of otherwise valid Amendment 1 elections and a mandatory refund of all collected revenues should the terms of the initiative be violated.

We must decide consistently with our prior case law whether Initiative # 73 contains multiple subjects. Here, Petitioners' primary claim concerns the retroactive invalidation of Amendment 1 elections along with the refund of revenues collected pursuant to the election should the terms of the provision be violated. Petitioners claim that, rather than being a mere enforcement or implementation mechanism, this provision is instead "a major and broad-sweeping undoing of the public will ... which would uniformly undermine the finality of all TABOR ballot elections for an indeterminate period of time."

Based upon our review of prior case law, we determine that Initiative # 73 does not violate the single-subject prohibition.

As noted above, we have generally held that mere implementation or enforcement details directly tied to the initiative's single subject will not, in and of themselves, constitute a separate subject. *See In re Initiative for 1997–98 # 113*, 962 P.2d 970, 971–72 (Colo.1998) (per curiam) (upholding the titles and summary for a proposed initiative to

limit pollution from hog farms, including its implementation measures and provisions for reporting waste disposal information to the Health Department); *In re Proposed Initiative "Petitions"*, 907 P.2d 586, 591 (Colo. 1995) (determining that a proposed initiative establishing comprehensive rules governing petitions did not violate the single-subject requirement in its inclusion of detailed procedures and its authorization for citizen lawsuits to ensure compliance).

Here, subsection (10)(D) of the proposed initiative states:

> Enforcement. When a district is found to have violated pay-to-play stated in (2)(A), the subject election is considered void. Revenues collected prior to an upheld pay-to-play challenge, shall be refunded to taxpayers.

■ Thus, if a lawsuit challenging a district for violating the pay-to-play provisions is found to have merit, the election will be declared void and the revenues collected pursuant to that election will be refunded. This enforcement provision is directly tied to the initiative's purpose of eliminating pay-to-play contributions and therefore is not a separate subject.

In addition, the remedy is not unlike other remedies contained within the Colorado Constitution. For example, in *Bickel v. City of Boulder*, 885 P.2d 215, 227 (Colo.1994), we analyzed article X, section 20(1) of the Colorado Constitution, which states:

> Individual or class action enforcement suits may be filed and shall have the highest civil priority of resolution.... Revenue collected, kept, or spent illegally since four full fiscal years before a suit is filed shall be refunded with 10% annual simple interest from the initial conduct.

We referred to this part of Amendment 1 as "an enforcement clause." *Bickel*, 885 P.2d at 228. This clause is substantially similar to that proposed in Initiative # 73, and therefore *Bickel* lends support to the proponents' argument that the clause in question should

subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.").

be interpreted as nothing more than an enforcement or implementation clause, consistent with our holdings in *In re Initiative for 1997–98 # 113* and *In re Proposed Initiative "Petitions"*.

Moreover, enforcement clauses such as that discussed in *Bickel* and in the instant case do nothing more than incorporate the inherent right of taxpayers to challenge tax, spending, or bond measures when they have standing to do so. *Dodge v. Dep't of Human Services*, 198 Colo. 379, 600 P.2d 70 (1979); *City of Denver v. Hayes*, 28 Colo. 110, 63 P. 311 (1900). Although such lawsuits have rarely been successful, in *City of Denver v. Hayes*, we overturned an election in which Denver voters had approved a bond for eleven different construction projects. *Hayes*, 28 Colo. at 113–15, 63 P. at 312–13. As a result of the decision, the projects were cancelled, and the Court affirmed an order mandating that Denver return money to a contractor. *Hayes*, 28 Colo. at 119, 63 P. at 314. Likewise, in the *Bickel* case, we invalidated an election because it raised an ad valorem tax in violation of Amendment 1. *Bickel*, 885 P.2d at 237. Accordingly, the enforcement provision in this initiative, consistent with our prior law, is not a separate subject but rather is directly tied to the initiative's single subject.

■ Petitioners also argue that the prohibition on pass-through contributions creates a second subject because it amends the "issue committee" provisions within article XXVIII of the Colorado Constitution. However, the language of the proposed initiative does not extend beyond ballot issue elections authorized by article X, section 20 of the Colorado Constitution, and therefore any effect on a provision within article XXVIII would be indirect. We have already determined:

> The mere fact that a constitutional amendment may affect the powers exercised by the government under pre-existing constitutional provisions does not, taken alone, demonstrate that a proposal embraces more than one subject. All proposed constitutional amendments or laws would have the effect of changing the status quo in some respects if adopted by the voters.

*In re Ballot Title 1999–2000 # 258(A)*, 4 P.3d 1094, 1098 (Colo.2000).

## C. The Titles Fairly Express the True Meaning and Intent of the Measure

Petitioners also contend that the title, ballot title, and submission clause set by the Title Board do not "fairly express the true meaning and intent of the proposed ... constitutional amendment" as required by section 1–40–107(1), C.R.S. (2005). They assert that the titles fall short in four ways: first, the titles incorrectly state that the initiative applies only to tax and debt campaigns; second, the restrictions on "pass-through" contributions are not mentioned; third, the titles do not mention the "pooling" restrictions contained within the proposed initiative; and, fourth, the titles do not mention the potential refund obligation that the initiative places on government districts.

■ We have recently reviewed our case law with respect to fair, clear and accurate titles. *In re Ballot Title for 2005–06 # 75*, No. 06SA63, 138 P.3d 267, 270–71, 2006 WL 1379609 (Colo. May 22, 2006). In short, the titles must be fair, clear, accurate, and complete, but they need not set out every detail of the initiative. *Id.* In addition, we review the titles set by the Title Board with great deference, and will only reverse the Board's decision if the titles are insufficient, unfair, or misleading. *In re Ballot Title for 1999–2000 # 256*, 12 P.3d 246, 254 (Colo.2000).

■ Petitioner's primary argument is that the Titles misstate the scope of the initiative. The Titles suggest that the initiative is limited to "tax or debt campaigns," while Petitioners claim that the initiative actually covers contributions to issue committees that advocate for issues other than "tax and debt," such as mill levies, property valuation adjustment, tax policy changes, and revenue and spending limits. This argument has no merit. The Titles track the language of the proposed initiative, which refers in section (10)(1) to "tax or debt election campaign(s)." By using this general language, the titles fairly put the public on notice that this provi-

sion applies to any election which affects taxes or the creation of public debt. As such, the Titles are fair, sufficient, and clear.

■ Second, while it is correct that the Titles do not mention the "pass-through" or "pooling" provisions of the proposed initiative, these provisions are not central features of the measure but rather are intended to block circumvention of the primary provision of the measure. Finally, although the Titles do not disclose that a district must refund moneys collected in violation of the initiative, the Titles do state that any election which violates the provisions of the initiative is void. As such, the Titles are not confusing and voters would not be misled.

### III. Conclusion

Accordingly, we affirm the action by the Title Board.

Justice HOBBS dissents and Justice BENDER joins in the dissent.

Justice EID does not participate.

### *Ballot Title Setting Board* **Proposed Initiative 2005–2006 # 73** [1]

The title as designated and fixed by the Board is as follows:

An amendment to the Colorado constitution concerning contributions made to a tax or debt campaign with the expectation of receiving a reward from a governmental entity, and, in connection therewith, prohibiting individuals and entities that make contributions in excess of five hundred dollars to issue committees that advocate a tax or debt increase from receiving employment, an award of a contract, or any transfer of taxpayer assets or funds from that governmental entity, and providing for enforcement of the measure by voiding the subject election when a governmental entity is found to have violated the prohibition.

The ballot title and submission clause as designated and fixed by the Board is as follows:

Shall there be an amendment to the Colorado constitution concerning contributions

made to a tax or debt campaign with the expectation of receiving a reward from a governmental entity, and, in connection therewith, prohibiting individuals and entities that make contributions in excess of five hundred dollars to issue committees that advocate a tax or debt increase from receiving employment, an award of a contract, or any transfer of taxpayer assets or funds from that governmental entity, and providing for enforcement of the measure by voiding the subject election when a governmental entity is found to have violated the prohibition?

*Hearing January 18, 2006:*

*Single subject approved; staff draft amended; titles set.*

*Hearing adjourned 2:24 p.m.*

*Hearing February 1, 2006:*

*Motion for Rehearing denied*

*Hearing adjourned 2:51 p.m.*

**BE IT ENACTED BY THE PEOPLE OF THE STATE OF COLORADO:**

ARTICLE X, SECTION 20 (TAXPAYER'S BILL OF RIGHTS) OF THE CONSTITUTION OF THE STATE OF COLORADO IS AMENDED BY THE ADDITION OF A NEW SUBSECTION TO READ:

(10) **SYSTEM TO END PAY–TO–PLAY.** (1) THIS SECTION TAKES EFFECT DECEMBER 31, 2006. THE PREFERRED INTERPRETATION SHALL REASONABLY DISCOURAGE THE PRACTICE KNOWN AS PAY–TO–PLAY, WHERE INDIVIDUALS AND ENTITIES CONTRIBUTE TO A TAX OR DEBT ELECTION CAMPAIGN WITH THE EXPECTATION OF OR PREREQUISITE OF RECEIVING; A REWARD, EITHER FINANCIAL OR OTHERWISE.

(2)(A) ANY INDIVIDUAL OR ENTITY THAT CONTRIBUTES MORE THAN FIVE HUNDRED DOLLARS, WHETHER CASH OR TEE EQUIVALENT, EITHER DIRECTLY OR INDIRECTLY, TO ANY ISSUE COMMITTEE AS DEFINED IN SECTION 2(10)(A) OF ARTICLE XXVIII, OR ANY COMBINATION OF ISSUE

---

**1.** Unofficially captioned "Issue Committee Contributions" by legislative staff for tracking purposes. Such caption is not part of the titles set by the Board.

COMM 1 THAT ADVOCATES IN FAVOR OF A BALLOT ISSUE THAT RAISES A TAX RATE, CONTINUES A TAX THAT WOULD OTHERWISE EXPIRE, CREATES A NEW TAX, OR INCREASES PUBLIC INDEBTEDNESS, OR ANY OTHER BALLOT ISSUE THAT MUST ADHERE TO THIS SECTION, SHALL NOT PROFIT BY RECEIVING A GIFT, BY RECEIVING EMPLOYMENT, BY BEING AWARDED A CONTRACT, OR BY RECEIVING ANY TRANSFER OF TAXPAYER ASSETS OR FUNDS IN EXCHANGE FOR GOODS OR SERVICES FROM THAT DISTRICT FOR WHICH THIS SECTION APPLIES FOR THE PERIOD THE SUBJECT TAX OR PUBLIC INDEBTEDNESS IS IN PLACE.

(B) PASS–THROUGH CONTRIBUTIONS TO ISSUE COMMITTEES THROUGH OTHER INDIVIDUALS OR ENTITIES ARE EXPRESSLY PROHIBITED AND ARE INCLUDED IN THE LIMITATIONS OF (2)(A). THE ORIGINATOR OF THE CONTRIBUTION AS WELL AS ALL INDIVIDUALS OR ENTITIES THAT HANDLED A PASSED–THROUGH CONTRIBUTION ARE SUBJECT TO THE LIMITATIONS STATED IN (2).(A).

(C) IF A CONTRIBUTION OF MORE THAN FIVE HUNDRED DOLLARS COMES FROM ANY INDIVIDUAL OR ENTITY THAT POOLS FUNDING FROM OTHER INDIVIDUALS OR ENTITIES, THEN ALL THE INDIVIDUALS AND ENTITIES THAT HAVE CONTRIBUTED MORE THAN FOUR HUNDRED DOLLARS INTO THAT ENTITY THAT POOLS SUCH FUNDING ARE SUBJECT TO THE LIMITATIONS STATED IN (2)(A).

(D) ENFORCEMENT. WHEN A DISTRICT IS FOUND TO HAVE VIOLATED PAY–TO–PLAY STATED IN (2)(A), THE SUBJECT ELECTION IS CONSIDERED VOID. REVENUES COLLECTED PRIOR TO AN UPHELD PAY–TO–PLAY. CHALLENGE, SHALL BE REFUNDED TO TAXPAYERS.

Justice HOBBS, dissenting.

I respectfully dissent. I would hold that Initiative 2005–2006 # 73 contains two subject matters: (1) a ban against districts paying funds to individuals or entities, when the funds are derived from taxes or bond proceeds from indebtedness approved by vote of the electorate and the individual or entity has contributed more than five hundred dollars, whether cash or the equivalent, to an issue committee that favored the ballot initiative, and (2) voiding the outcome of the election in which the voters approved the tax or bonded indebtedness if the district pays such funds to such an individual or entity.

In my view, the proposed initiative would (1) amend the current laws applicable to issue committees, Colo. Const. art. XXVIII, sec. 2(4) and sec. 3(7); (2) would amend laws requiring districts to solicit bids and award contracts for the construction, operation, and maintenance of public works by prohibiting the award of contracts to otherwise qualified bidders based on the merits of the bid; and (3) would amend that provision of article X, section 20(3), which allows voters to consider and approve district tax increases and bonded indebtedness.

A fundamental provision of Amendment 1 placed before the voters and approved by them in 1992 was to allow voters to approve increased taxes and/or bonded indebtedness required to provide public works for the benefit of the citizens within the district. *See Havens v. Bd. of County Comm'rs,* 924 P.2d 517, 523 (Colo.1996). While Initiative # 73 purports to address regulation of issue committee contributions, which voters at the 2006 general election could favor as a worthwhile campaign reform innovation, its other major purpose is to void elections at which the voters have approved tax increases or bonded indebtedness as serving the public good within the district. A third purpose is to prevent districts from awarding a public contract to the lowest bidder because that individual or entity has contributed more than five hundred dollars to an issue committee.

Article V, section 1(5.5) of the Colorado Constitution (1) prohibits an initiative that contains more than one subject, and (2) re-

quires that this one subject shall be clearly expressed in its title:

> *No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title;* but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

Colo. Const. art. V, § 1(5.5) (emphasis added).

A principal concern that led to voter enactment in 1994 of the multiple subject ban is that proponents would secure the enactment of subjects that could not be enacted on their merits alone. *In re Title, Ballot Title 1997–98 No. 30*, 959 P.2d 822, 825 (Colo.1998). An initiative impermissibly contains more than one subject if its text relates to more than one subject and if the measure has at least two distinct and separate purposes that are not dependent upon or connected with each other. *Id.*

The first purpose of Initiative # 73, to discourage the contribution of more than $500.00 to an issue committee that favors a district ballot proposal, is not dependent upon or connected with voiding a vote of the district's electorate that approved a tax increase, extension of a tax, and/or bonded indebtedness to build a needed public works project through funds the voters approve, such as a water facility or a water or wastewater treatment facility.

While I recognize that enforcement measures attached to a single subject do not typically constitute a second subject under this rubric, the voiding of an electorate's prior vote is hardly a logically connected enforcement measure within the context of this initiative.

In my view, a logically connected measure to implement the first purpose of Initiative # 73 would be to enjoin or penalize the issue committee or the individual or entity that contributes to the issue committee. It is an entirely separate purpose, not a logically connected enforcement mechanism, to void the outcome of a citizen vote because a contributor to an issue committee successfully competed, by reason of the merits of its bid, against others who bid on a district project.

In my view, the enforcement cases the majority cites do not stand for the proposition that voiding the results of an election is an enforcement matter, not a separate subject. The enforcement measures we held not to be a separate subject in *In re Ballot Title 1997–98 No. 113*, 962 P.2d 970, 971–72 (Colo. 1998), were permitting and reporting requirements for hog farm pollution directly implementing the one subject of the initiative.

The enforcement measures we considered and held not to be a separate subject in *In re Petition for Amendment to Constitution*, 907 P.2d 586, 591 (Colo.1995), were procedures such as guidelines for formatting and filing petitions, procedures for challenging ballot titles, rules applicable to petitions, and standing for lawsuits including recovery of costs and attorneys fees for violation of the measure's provisions. Again, these were directly related to the one subject of the initiative.

Likewise, in *Bickel v. City of Boulder*, 885 P.2d 215, 228 (Colo.1994), we referred to the standing of a citizen to bring a lawsuit to enforce Amendment 1 as an "enforcement" provision. In that case, we did rule that a portion of the city's proposal to raise an ad valorem property tax in an unspecified amount was invalid as a violation of Amendment 1's requirement to make a good faith estimate of the dollar increase in ad valorem taxes. *Id.* at 236. The single subject of Amendment 1 was involved in that case.[1] Enforcement was for a violation of the provisions of Amendment 1 pertaining to a tax increase proposal.

---

1. The bond election in *City of Denver v. Hayes,* 28 Colo. 110, 113–15, 63 P. 311, 312–13 (1900) was voided because of a multiple subject violation.

In my view the Majority does not cite this case appropriately for its enforcement provision conclusion.

In contrast, there are two subjects in the measure before us in this case: issue committee contribution reform and voiding an election that properly complied with Amendment 1 at the time it occurred.

The Majority reasons that the connecting link between the issue committee reform and voiding a properly held Amendment 1 election is that only Amendment 1 elections are affected by the measure before us. Maj. Op. at 740. However, in reviewing the Title Board's action, we must ascertain whether multiple subjects are combined in a manner that could result in voter surprise or fraud. *In re Title, Ballot Title 1997–98 No. 30*, 959 P.2d at 827. I would conclude that this measure's voiding of properly held prior district tax or bonded indebtedness elections is buried within the issue committee reform proposal, similar to the way the change in criteria for elections under Amendment 1, a separate subject matter, was buried in the tax cut proposal of *Initiative 1997–98 No. 30*, for which we held that multiple subjects existed in violation of the Colorado Constitution.[2]

Thus, I would hold that Initiative 2005–2006 #73 violates the single subject matter constitutional provision, and the Title Board was prohibited from setting a title and ballot title and submission clause for this proposed initiative.

Accordingly, I respectfully dissent.

I am authorized to say that JUSTICE BENDER joins in this dissent.

---

**2.** I also observe that the initiative's use of the words "system to end pay to play" is a slogan or catch phrase calculated to attract attention to the issue committee reform provision of the initiative and to obscure the second provision that would void prior properly held Amendment 1 elections.