In the Matter of the TITLE, BALLOT TITLE and SUBMISSION CLAUSE, and SUMMARY FOR 2005–2006 # 75,

Petitioners: Bennett S. Aisenberg and Federico C. Alvarez,

v.

Respondents: John K. Andrews, Jr. and Kathleen A. LeCrone,

and

Title Board: William A. Hobbs, Jason Dunn, and Dan Cartin.

No. 06SA63.

Supreme Court of Colorado, En Banc.

May 22, 2006.

Isaacson Rosenbaum P.C., Marc G. Grueskin, Daniel C. Stiles, Denver, for Petitioners.

John W. Suthers, Attorney General, Maurice G. Knaizer, Deputy Attorney General, Public Officials, State Services Section, Denver, for the Title Board.

No appearance by or on behalf of Respondents John K. Andrews, Jr. and Kathleen A. LeCrone.

HOBBS, Justice.

In this original proceeding pursuant to section 1–40–107(2), C.R.S. (2005), petitioners Bennett S. Aisenberg and Federico C. Alvarez ("Aisenberg") challenge the action of the initiative ballot title setting board ("Title Board") in setting the title and ballot title and submission clause for Initiative 2005–2006 # 75 ("Initiative # 75").[1] We hold that

---

1. Aisenberg raises the following four issues in his opening brief:

Whether the ballot title is misleading because it does not communicate that justices and appellate judges now in office are retroactively subject to the limitations on terms established by this measure.

Whether the ballot title is misleading because it does not communicate that the initiative converts the terms served by all currently sitting justices and appellate judges to four-year terms.

Whether the ballot title is misleading because it implies that this initiative imposes, rather than changes, terms of office for justices on the Supreme Court and judges on the Court of Appeals.

Whether "term limits" is a prohibited catch phrase, given the way it has been used by initiative proponents in political messages sent

the Title Board designated and fixed a fair, clear, and accurate title for Initiative # 75 in accordance with article IV, section 1(5.5), Colo. Const., and sections 1–40–106 and 1–40–106.5, C.R.S. (2005). Accordingly, we uphold the action of the Title Board.

## I.

In 1966, a citizen-initiated constitutional amendment approved by the Colorado electorate ended the prior system of selecting Colorado county court, district court, and court of appeals judges and supreme court justices through partisan political elections, in favor of selecting them through nominating commissions, appointment by the governor from the list of those nominated, and retention votes by the electorate.[2] Constitutional Amendments and a Referred Law Submitted to and Adopted by the People at the General Election, Nov. 8, 1966, ch. 455, sec. 6, 1967 Colo. Sess. Laws 6.

Under the current provisions instituted by the 1966 constitutional amendment, new court of appeals judges and supreme court justices each serve a provisional term following appointment by the governor from nominations of the statewide citizen nominating commission. Colo. Const. art. VI, § 20(1). The provisional term is for two years plus the additional number of days until the second Tuesday in January following the next general election. *Id.*

If they wish to continue serving in the judicial office to which the governor appointed them, court of appeals judges and supreme court justices must stand for a retention vote before the statewide electorate. Colo. Const. art. VI, § 25. If retained by a majority of those voting, Colo. Const. art. VI, § 25, court of appeals judges serve a term of eight years, § 13–4–104(1), C.R.S. (2005), and supreme court justices serve a term of ten years, Colo. Const. art. VI, § 7. The General Assembly created the court of appeals pursuant to section 1 of article VI of the Colorado Constitution. §§ 13–4–101 to –113, C.R.S. (2005).

Upon nearing completion of the term for which they were previously retained in office, court of appeals judges and supreme court justices are eligible to again stand for retention by the statewide electorate to serve for another eight- or ten-year term of office, respectively. Colo. Const. art. VI, § 25. However, every court of appeals judge and justice must retire by his or her seventy-second birthday. Colo. Const. art. VI, § 23(1).

Initiative # 75 would add a new section 26 to article VI of the Colorado Constitution that would alter the term length and number of terms judges of the court of appeals and justices of the supreme court may serve. The text of Initiative # 75 states that the terms of office for court of appeals judges and supreme court justices shall be four years, and no court of appeals judge or supreme court justice may serve more than three terms of office. The provisional term following appointment by the governor counts as one of the three terms. No court of appeals judge or supreme court justice is eligible for another term in that office if she or he has served twelve years or more therein. The current ten-year term of office for retained justices of the supreme court would be repealed by Initiative # 75.

Following hearing and rehearing, the Title Board designated and fixed the title and the ballot title and submission clause for Initiative # 75. Both of these hearings contained an interchange between the members of the Title Board and one of the initiative's proponents, John Andrews. Andrews made conflicting statements about his understanding of how the proposed initiative, if enacted, would affect the existing terms of currently serving court of appeals judges and supreme court justices and those who stand for retention at the general election of 2006.

Ultimately, the Title Board concentrated on the actual wording of the proposed initia-

---

through so-called "push polls," on the Internet, and in the press.

2. Denver County Court judges are selected under a merit selection system established by the Denver city charter, with appointments being made by the mayor. Colo. Const. art. VI, § 26. Our discussion henceforth in this opinion focuses on court of appeals judges and supreme court justices because Initiative # 75 addresses only them.

tive and designated and fixed a title and ballot title and submission clause that reflect the actual wording, intent, and meaning of the proposed initiative.

Andrews testified that his intent was to "put the appeals court judges and the supreme court justices onto the shorter four-year track." *Proposed Initiative 2005–2006 # 75: Hearing Before the Initiative Title Setting Review Board*, at 3 (Feb. 1, 2006) (hereinafter *"Hearing"*). Each such judge or justice would have the provisional two-year term upon appointment by the governor and then would be eligible to stand for retention twice to a four-year term. *Hearing*, at 4.

As to those court of appeals judges and supreme court justices who had served in their offices for 12 years, Andrews said Initiative # 75 states that they would "not be eligible to be on the ballot for another retention."

MR. DUNN: And—and how would it apply to them?

MR. ANDREWS: Well, it—in that someone might have already served 12 years at which time that judge or justice *would not be eligible to be on the ballot for another retention.*

*Hearing*, at 4 (emphasis added).

Aisenberg's counsel, Mr. Grueskin, argued that the board had designated and fixed a title that did not disclose the "intent" and "workings" of the amendment. He suggested that "existing jurists ... if they have served 12 years or more, they are effectively being kicked off the court." *Proposed Initiative 2005–2006 # 75: Rehearing Before Initiative Title Setting Review Board*, at 11 (Feb. 15, 2006) (hereinafter *"Rehearing"*).

At this point, Andrews began to state the proponents' intention to cut short the terms of currently serving court of appeals judges and supreme court justices, who were previously retained by the voters, to four-year terms instead of the eight- or ten-year terms the voters approved by favorable retention vote.

Andrews suggested to the board that it insert language saying that the initiative applied to both future and current judges and justices because he intended his proposal "to operate on the seven supreme court judges—justices and 15 appeals court judges then sitting." [3] *Rehearing*, at 42. Mr. Andrews utilized the example of currently serving Justice Nathan Coats. Retained in 2002, Justice Coats' next retention election would be 2012 pursuant to current article VI, section 7, but would change to 2008, according to Andrews, if Initiative # 75 passes in the 2006 general election in order to place the justice on the four-year term track.

MR. DUNN: .... And for Justice Coats who has already served—who, as you said, is in his sixth year, I think. He's also served his two-year provisional, and is in this first ten-year term, how would that apply to him?

MR. ANDREWS: So depending when he was last retained—

MR. DUNN: '02.

MR. ANDREWS: Well, then—then I believe at the '08 general election, he would face retention again because the next general election as close as possible to a four-year term to get him as an incumbent into the rotation that would operate more smoothly in the future, he would have to face retention.

. . . .

MR. DUNN: And then he could serve four years.

MR. ANDREWS: Yes.

MR. DUNN: So he would serve 12 years.

MR. ANDREWS: Yes.

*Rehearing*, at 55–56.

Turning however to the actual wording of the proposed initiative, the Title Board designated and fixed a title and ballot title and submission clause that reflected the actual wording of the proposed initiative, and it made only a minor change in the wording as a result of the rehearing.

On review of the Title Board's action, we reject Aisenberg's contention that the title

---

3. At the time of the hearing, under section 13–4–103(1), C.R.S. (2005), there were sixteen court of appeals judges authorized by the General Assembly for this statutorily-established court.

and ballot title and submission clause contain a prohibited catch phrase or slogan in utilizing the phrase "term limits" and that the title and submission clause do not fairly, clearly, and accurately express the true intent and meaning of Initiative # 75.

## II.

■ We hold that the Title Board designated and fixed a fair, clear, and accurate title and ballot title and submission clause for Initiative # 75 in accordance with article IV, section 1(5.5), Colo. Const., and sections 1–40–106 and 1–40–106.5, C.R.S. (2005). Accordingly, we uphold the action of the Title Board.

### A.

### Fair, Clear, and Accurate Title

Article V, section 1(5.5) of the Colorado Constitution (1) prohibits an initiative that contains more than one subject, and (2) requires that this one subject shall be clearly expressed in its title:

> *No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title;* but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

Colo. Const. art. V, § 1(5.5) (emphasis added).

The Title Board's statute correspondingly recites that the single subject of the proposed initiative "shall be clearly expressed in its title." § 1–40–106.5(1)(a), C.R.S. (2005). One of the purposes of this constitutional provision and the Title Board statute is to "prevent surreptitious measures and apprise the people of the subject of each measure by the title, that is, to prevent surprise and fraud from being practiced upon voters." § 1–40–106.5(1)(e)(II), C.R.S. (2005).

Thus, the General Assembly has directed the Title Board to "designate and fix a proper fair title for each proposed law or constitutional amendment, together with a submission clause." § 1–40–106(1), C.R.S. (2005). In setting the title, the board "shall consider the public confusion that might be caused by misleading titles" and the title "shall correctly and fairly express the true intent and meaning thereof." § 1–40–106(3)(b), C.R.S. (2005). Ballot titles shall be in the form of a question that may be answered for or against the measure by a "yes" or "no" vote and "shall unambiguously state the principle of the provision sought to be added, amended, or repealed." *Id.*

We have previously applied these constitutional and statutory provisions to the Title Board's chosen title for a proposed initiative that contained a limitation on judicial terms similar to the one now before us. *See In re Ballot Title 1999–2000 No. 29,* 972 P.2d 257 (Colo.1999). We there concluded that the proposed initiative was either ambiguous or contained a concealed intent, for which the Title Board had not properly captured its meaning in the title so that voters could give a "yes" or "no" answer to the proposition. *Id.* at 267.

In that case, the material ambiguity or concealed intent in the initiative and the title stemmed from an effective date in the proposed initiative that antedated the general election by one day. This led to the title not being clear as to whether that initiative, if passed, would allow judges retained at the 2000 general election to serve the full terms to which they were elected under the then-current term provisions of the constitution as they existed on election day.

That initiative proposed, in part, that judges and justices exercising statewide jurisdiction would have only three future terms of four years each. The Title Board designated and fixed a title that did not clearly state whether the term of office to which a judge standing for retention at the 2000 election was elected would be one of the three future terms to which he or she would be limited by the initiative if adopted by the voters at the 2000 election. *Id.* at 268.

Reviewing the title as we are required to do by the Title Board's statute, we determined that it was not fair, clear, and accurate. Because of the wording of the title, some voters could have believed that the three four-year terms to which judges would be limited would commence at the judge's next retention election; other voters could have believed that judges retained at the 2000 election would begin their first of the three limited four-year terms upon passage of the initiative.

Accordingly, we reversed the Title Board's action. *Id.* Because that initiative also contained more than one subject matter, we ordered the board to strike the titles and return the initiative to its proponent instead of considering a revised title that captured the intent and meaning of the initiative. *Id.*

### B.

### Application to this Case

■ In conducting our review of the Title Board's action, we do not address the merits of the proposed initiative or suggest how an initiative might be applied if enacted; however, we must examine its wording to determine whether the Title Board's action complies with the constitutional and statutory provisions governing the setting of a title and ballot title and submission clause. *In re Title, Ballot Title 1997–98 No. 30,* 959 P.2d 822, 825 (Colo.1998). In construing an initiative for this limited purpose, we employ the usual rules of statutory construction, including the rule that words and phrases shall be read in context and construed according to the rules of grammar and common usage. *Id.* (stating that general rules of statutory construction apply to interpretation of citizen-initiated measures).

Under the applicable law, the Title Board bears responsibility for ascertaining and stating the initiative's intent and meaning through plain language that voters may answer "yes" or "no." Section 1–40–106.5(1)(e)(II), C.R.S. (2005), prevents surreptitious measures, and requires the Title Board to apprise the people of the subject of the measure by means of the title it designates and sets, so as to prevent surprise and fraud from being practiced on the voters. In setting the title, the board "shall consider the public confusion that might be caused by misleading titles" and the title "shall correctly and fairly express the true intent and meaning thereof." § 1–40–106(3)(b), C.R.S. (2005).

In the case before us, the record shows that the Title Board received testimony from one of the proponents of Initiative # 75 that created confusion about the intent and meaning of Initiative # 75. Andrews stated that, should the voters pass this initiative at the 2006 general election, his intent included (1) cutting the existing term of members of the court of appeals and the supreme court to a four-year term and (2) cutting the term of those judges and justices who are retained at the 2006 general election from the eight- or ten-year terms for which the voters approve them to a four-year term. It is this testimony upon which Aisenberg relies to claim that the title and ballot title and submission clause set by the Title Board are not fair, clear, and accurate.

The Title Board responds that (1) the wording it chose for the title and ballot title and submission clause properly reflects the actual wording, intent, and meaning of Initiative # 75 and (2) this initiative is distinguishable from the 1999–2000 # 29 term limits initiative case because the proposal and titles there did not clarify whether the initiative, which was effective the day before the 2000 general election, would shorten the term of judges who were retained at that election.

We agree with the Title Board. The material ambiguity or concealed intent of the term limits proposed initiative we addressed in our decision concerning *In re Ballot Title 1999–2000 No. 29,* 972 P.2d 257, 267 (Colo.1999), was an effective date of November 6, 2000 that preceded the date of the November 7, 2000 election by one day. The wording the Title Board picked was not clear as to whether the initiative proposed that judges retained as a result of the year 2000 general election could serve the full terms to which they were elected under the constitution as it existed on election day, 2000, should the initiative also be approved by the voters that day.

Accordingly, citizens voting at the year 2000 general election could have believed that they were being asked to approve (1) ten-year terms commencing in January of 2001 for supreme court justices and eight-year terms for court of appeals judges and (2) the three limited four-year terms proposed by the initiative would be applicable to those judges and justices when they next stood for retention. Other voters could have believed that judges up for retention on the year 2000 ballot would have been entering upon the first of the three limited four-year terms if the initiative had passed.

Accordingly, we there held that the Title Board's chosen wording was unclear and misleading with regard to the term limits proposal. Here, in contrast, the actual wording of Initiative # 75 contains no provision that would cut short (1) the existing terms of currently serving court of appeals judges and supreme court justices for which they were previously retained by the voters or (2) the terms of office of those judges and justices who stand for retention in the 2006 election under the current provisions of article VI of the Colorado Constitution.

To the contrary, the actual wording of Initiative # 75 is prospective in nature: "ANYONE WHO HAS SERVED TWELVE YEARS OR MORE AT ONE COURT LEVEL *SHALL NOT BE ELIGIBLE FOR ANOTHER TERM AT THAT LEVEL.*" (Emphasis added.) The word "eligible" pertains to qualifying for the next election at which the court of appeals judge or supreme court justice may stand for retention, as set forth in Colorado Constitution article VI, section 25, after Initiative # 75 becomes effective. At such a retention election, a court of appeals judge or justice who has not served a total of twelve years in the office, if retained, would be placed on the four-year term track that Initiative # 75 proposes.

Giving effect to the plain language of Initiative # 75, as we must in ascertaining its

intent and meaning for the purpose of reviewing the Title Board's action, *In re Title, Ballot Title 1997–98 No. 30,* 959 P.2d 822, 825 (Colo.1998), we conclude that this initiative would be prospective in its operation if voters adopt it. Accordingly, we reject Aisenberg's contention that its adoption would cut short the terms of office of currently serving court of appeals judges and supreme court justices previously approved by voters on retention and the terms of those judges and justices who are retained in office by the voters at the 2006 election. The Title Board was not required to bring such a contention to the attention of the voters in the title and ballot title and submission clause it designated and fixed for Initiative # 75.

Colorado Constitution article V, section 1(5.5) requires that the one subject of an initiative shall be clearly expressed in its title, and section 1–40–106.5(1)(e)(II), C.R.S. (2005), provides that a purpose of the Title Board's role is to prevent surprise and fraud from being practiced upon voters. The Title Board has complied with these provisions in this case by fairly, clearly, and accurately reflecting the actual wording, intent, and meaning of Initiative # 75.[4] This measure does not contain a surreptitious or concealed provision for cutting short the existing terms of serving judges and justices retained before or at the 2006 general election, in contrast to the measure proposed in *In re Ballot Title 1999–2000 No. 29,* 972 P.2d at 267.

## III.

Accordingly, we affirm the action of the Title Board.

Justice EID does not participate.

## APPENDIX

The text of Proposed Initiative 2005–2006 # 75 is as follows:

4. We conclude that the words "term limits" are not a prohibited slogan or catch phrase in the context of this initiative. We used those words in describing a similar initiative at issue in the *In re Ballot Title 1999–2000 No. 29* case, 972 P.2d at 267. Also, the Title Board need not clarify that the provisional term a court of appeals judge or

supreme court justice serves after appointment by the governor may be less than four years. Depending on the date of appointment, in relation to the next general election at which the judge or justice must stand for retention, such a term can range between two and four years depending on the particular facts.

Be it Enacted by the People of the State of Colorado:

Section 1. Article VI of the constitution of the state of Colorado is amended by the addition of a new section to read:

**Section 27. Terms of office and term limits.** TERMS OF OFFICE FOR COURT OF APPEALS AND SUPREME COURT JUDGES SHALL BE FOUR YEARS. AT EACH LEVEL, NO ONE SHALL SERVE MORE THAN THREE TERMS OF OFFICE. A PROVISIONAL TERM SHALL BE A TERM OF OFFICE. ANYONE WHO HAS SERVED TWELVE YEARS OR MORE AT ONE COURT LEVEL SHALL BE NOT ELIGIBLE FOR ANOTHER TERM AT THAT LEVEL.

Section 2. Repeal. Section 7 of Article VI of the constitution of the state of Colorado is repealed as follows:

**Section 7. Term of office.** ~~The full term of office of justices of the Supreme Court shall be ten years.~~

**Proposed Initiative 2005–2006 # 75** [1]

The title as designated and fixed by the Board is as follows:

An amendment to the Colorado constitution concerning term limits for appellate court judges, and, in connection therewith, providing four-year terms of office for justices of the supreme court and judges of the court of appeals, prohibiting a justice of the supreme court or a judge of the court of appeals from serving more than three terms, and making any justice or judge who has served more than twelve years at one court level ineligible for another term at that level.

The ballot title and submission clause as designated and fixed by the Board is as follows:

Shall there be an amendment to the Colorado constitution concerning term limits for appellate court judges, and, in con-

nection therewith, providing four-year terms of office for justices of the supreme court and judges of the court of appeals, prohibiting a justice of the supreme court or a judge of the court of appeals from serving more than three terms, and making any justice or judge who has served more than twelve years at one court level ineligible for another term at that level?

---

1. Unofficially captioned **"Term Limits on Court of Appeals and Supreme Court Judges"** by legislative staff for tracking purposes. Such caption is not part of the titles set by the Board.

