2012 CO 26

**In the Matter of the TITLE, BALLOT TITLE, and SUBMISSION CLAUSE FOR 2011–2012 # 45**

**Douglas Kemper, Petitioner**

v.

**Richard G. Hamilton and Phillip Doe, Proponents, Respondents**

and

**William A. Hobbs, Jason Gelender, and Daniel Domenico, Title Board.**

**No. 12SA22.**

Supreme Court of Colorado, En Banc.

April 16, 2012.

Burns, Figa & Will, P.C., Stephen H. Leonhardt, Alix L. Joseph, Sarah M. Shechter, Greenwood Village, Colorado, for Petitioner.

Richard G. Hamilton, Fairplay, Colorado, pro se.

John W. Suthers, Attorney General, Maurice G. Knaizer, Deputy Attorney General, Denver, Colorado, for Ballot Title Board.

No appearance by or on behalf of Phillip Doe.

Justice RICE delivered the Opinion of the Court.

¶1 In this original proceeding under section 1–40–107(2), C.R.S. (2011), we review the Ballot Title Setting Board's ("Title Board") findings that proposed Initiative 2011–2012 No. 45 ("Initiative 45"), its title, and its ballot title and submission clause (the "Titles") contain a single subject.[1] We hold that the Title

---

1. Petitioner Douglas Kemper presented the following two issues for our review:

A. Whether the Ballot Title Setting Board (the "Board") incorrectly determined that Initiative 2011–2012 No. 45 is limited to a single subject,

Board was correct. Initiative 45 and its Titles state a single subject—"public control of waters"—and therefore comply with article V, section 1(5.5) of the Colorado Constitution and section 1–40–106.5, C.R.S. (2011). We therefore affirm the action of the Title Board.

## I. Facts and Procedural History

¶ 2 Respondents Richard G. Hamilton and Phillip Doe proposed Initiative 45 to amend article XVI, section 6 of the Colorado Constitution with the goal of expanding the scope of public control over all of the state's water. The existing version of article XVI, section 6 addresses the diversion of unappropriated waters of natural streams. Initiative 45, with proposed subsection (1), would delete the "unappropriated" and "natural stream" language of the exiting provision to allow diversion of "water within the state of Colorado." This right to divert would be limited or curtailed "to protect natural elements of the public's dominant water estate by holding as unlawful any usufruct use of water causing irreparable harm to the public's estate."

¶ 3 Proposed subsection (2) would protect the revised public water estate by requiring appropriators to return the water they use "unimpaired to the public." Proposed subsection (3) would additionally clarify the extent of the public's control of Colorado water by declaring that the "Colorado doctrine of appropriation" would involve a public grant of a water use "privilege" to appropriators, so long as they divert water for "the common good." Proposed subsection (4) would define the state government's role as "stewards" of the amended public water estate, and would task state officials with implementing and enforcing the revised water regime. Pro-

posed subsection (5) would confer standing upon Colorado citizens to compel the state government to comply with the stewardship obligation outlined in subsection (4). Finally, proposed subsection (6) would authorize the legislature to enact laws supplementary to the provisions of the constitutional amendment.

¶ 4 The Title Board designated the Titles for Initiative 45 in accordance with section 1–40–106(1), C.R.S. (2011), during a public meeting on January 4, 2012. The title as designated and fixed by the Title Board reads as follows:

> An amendment to the Colorado constitution concerning *public control of water*, and, in connection therewith, allowing appropriative water rights to be limited or curtailed by prohibiting any use of water that would irreparably harm the public ownership interest in water; expanding the right to appropriate water for beneficial use to all water within Colorado, including nontributary groundwater and not limited to unappropriated water, subject to the public ownership interest; requiring water users to return water unimpaired after use to the public so as to protect the natural environment and the use and enjoyment of water by the public; requiring state government to act as steward of and to protect, enforce, and implement the public ownership interest; and allowing any Colorado citizen to sue to enforce the amendment.

(Emphasis added).

¶ 5 The ballot title and submission clause contains the same language as the title, phrased in the form of a question. Petitioner Douglas Kemper filed a Motion for Rehearing on January 11, 2012, arguing that Initia-

---

as required by Article V, section 1(5.5) of the Colorado Constitution and C.R.S. § 1–40–106.5, in light of the multiple objectives of this measure to:

1. Subordinate both past and future water diversion and use rights to mandated state government enforcement of a dominant public water estate;

2. Expand the scope of water appropriation under article XVI, section 6 of the current Constitution, by removing the terms limiting such appropriation to "unappropriated waters of any natural stream" so as to allow appropri-

ation of nontributary groundwater without consent of the overlying landowner; and

3. Impose a requirement that water appropriators return water unimpaired to the stream.

B. Whether the Board's title and ballot title and submission clause for Initiative 2011–2012 No. 45 is unfair in that the phrase "concerning the public control of waters" is misleading and fails to clearly express a single subject that encompasses all the issues actually addressed in the proposed initiative.

tive 45 and the adopted Titles violated the single subject requirements of section 1–40–106.5 and of article V, section 1(5.5) of the Colorado Constitution. The Title Board heard testimony on the Motion for Rehearing during a meeting on January 18, 2012. It discussed the measure, and denied Kemper's objections, finding that both Initiative 45 and the Titles contained a single subject: "public control of waters." Kemper seeks this Court's review of the Title Board's findings pursuant to section 1–40–107(2).

## II. Analysis

¶ 6 We hold that the Title Board correctly found that Initiative 45 contains a single subject because the proposed subsections necessarily and properly relate to "public control of waters." We also hold that the Titles set by the Title Board satisfy the clear title requirement because they fairly and clearly reflect the single subject of Initiative 45.

¶ 7 We first describe our limited role in reviewing the Title Board's single subject determination. We then outline Colorado's single subject rule, noting the dangers of omnibus initiatives. Analyzing the plain language of Initiative 45, we hold that the proposal complies with the single subject rule. Finally, we describe and apply the clear title requirement to conclude that the Titles clearly and fairly express the true intent and meaning of Initiative 45 and its single subject.

### A. Single Subject

#### 1. Standard of Review

¶ 8 In reviewing a challenge to the Title Board's single subject decision, "we employ all legitimate presumptions in favor of the propriety of the [Title] Board's actions." *In re Title, Ballot Title, and Submission Clause for 2009–2010 No. 45*, 234 P.3d 642, 645 (Colo.2010). We will only overturn the Title Board's finding that an initiative contains a single subject in a clear case. *In re Title, Ballot Title and Submission Clause, and Summary Pertaining to the Casino Gaming Initiative Adopted on April 21, 1982*, 649 P.2d 303, 306 (Colo.1982).

¶ 9 In addition, our limited role in this process prohibits us from addressing the merits of a proposed initiative, and from suggesting how an initiative might be applied if enacted. *In re Title, Ballot Title and Submission Clause for Proposed Initiative 2001–02 No. 43*, 46 P.3d 438, 443 (Colo.2002). We will sufficiently examine the initiative, however, to determine whether or not it violates the constitutional prohibition against initiative proposals containing multiple subjects. *Id.; see also* Colo. Const. art. V, § 1(5.5). During this examination, we employ the general rules of statutory construction and accord the language of the proposed initiative its plain meaning. *In re Title, Ballot Title and Submission Clause, for 2007–2008, No. 17*, 172 P.3d 871, 874 (Colo.2007).

#### 2. The Single Subject Requirement

¶ 10 Colorado law requires "that every constitutional amendment or law proposed by initiative ... be limited to a single subject, which shall be clearly expressed in its title." § 1–40–106.5; *see also* Colo. Const. art. V, § 1(5.5) ("No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title...."). A proposed initiative violates this rule if its text "relate[s] to more than one subject, and [has] at least two distinct and separate purposes not dependent upon or connected with each other." *People ex rel. Elder v. Sours*, 31 Colo. 369, 403, 74 P. 167, 177 (1903); see *In re Proposed Initiative 2001–02 No. 43*, 46 P.3d at 441 (describing use of *Sours* test to analyze ballot initiatives). As such, the subject matter of an initiative must be "necessarily and properly connected" rather than "disconnected or incongruous." *In re Title, Ballot Title, Submission Clause, and Summary Adopted April 5, 1995, by Title Bd. Pertaining to a Proposed Initiative "Pub. Rights in Waters II"*, 898 P.2d 1076, 1079 (Colo.1995).

¶ 11 A proponent's attempt to characterize a proposed initiative under "some overarching theme" will not save the measure if it contains separate and unconnected purposes. *In re Proposed Initiative 2001–02 No. 43*, 46 P.3d at 442. We have held that "water" and "revenue changes" are two ex-

amples of "overarching themes" that did not qualify as single subjects when the proposed initiatives associated with the themes contained disconnected or incongruous provisions. *See Pub. Rights in Waters II*, 898 P.2d at 1080 (holding that "water" is too general and too broad to constitute a single subject); *see also In re Title, Ballot Title and Submission Clause, and Summary with Regard to a Proposed Petition for an Amendment to the Constitution of the State of Colo. Adding Subsection (10) to Section 20 of Article X (Amend TABOR 25)*, 900 P.2d 121, 125 (Colo.1995) (concluding that umbrella subject of "revenue changes" did not alter the fact that the measure contained two unrelated subjects-a tax credit and changes to the procedural requirements for ballot titles).

¶ 12 We have previously explained that the single subject rule prevents two "dangers" associated with omnibus initiatives. *See In re Proposed Initiative 2001–02 No. 43*, 46 P.3d at 442–43. First, combining subjects with no necessary or proper connection for the purpose of garnering support for the initiative from various factions-that may have different or even conflicting interests—could lead to the enactment of measures that would fail on their own merits. *Id.* at 442; *see* § 1–40–106.5(1)(e)(I). Second, the single subject rule helps avoid "voter surprise and fraud occasioned by the inadvertent passage of a surreptitious provision 'coiled up in the folds' of a complex initiative." *In re Proposed Initiative 2001–02 No. 43*, 46 P.3d at 442; *see* § 1–40–106.5(1)(e)(II).

¶ 13 Recognizing these dangers, we have applied the single subject rule to water-related initiatives—similar to Initiative 45—on several previous occasions. In 1995 and 2007, we held that the proponents' proposed public trust initiatives contained multiple subjects. *See Pub. Rights in Waters II*, 898 P.2d at 1077; *In re Initiative 2007–2008, No. 17*, 172 P.3d at 872–73. In *Public Rights in Waters II*, we applied the *Sours* test and determined that the proposed initiative violated the single subject rule because no necessary connection existed between the measure's two water district election paragraphs and the two public trust water rights paragraphs. 898 P.2d at 1080. Citing *Public*

*Rights in Waters II*, we similarly concluded in 2007 that a different proposed public trust doctrine initiative violated the single subject rule because the initiative improperly paired "the creation of a new environmental department with the separate and discrete subject of the creation of a public trust standard." *In re Proposed Initiative 2007–2008, No. 17*, 172 P.3d at 875. In 1996, however, we upheld the Title Board's finding that a proposed public trust doctrine initiative satisfied the single subject requirement because the subject—"the public's interest in state waters"—was "sufficiently narrow and sufficiently connected" with all of the proposed initiative's provisions. *In re Title, Ballot Title, Submission Clause, and Summary Adopted March 20, 1996, by the Title Bd. Pertaining to Proposed Initiative 1996–6*, 917 P.2d 1277, 1278–81 (Colo.1996).

¶ 14 With this legal framework in mind, we turn to Initiative 45.

### 3. Initiative 45 Contains a Single Subject

¶ 15 Initiative 45 contains a single subject because its provisions necessarily and properly relate to the "public control of waters." Subsection (1) of the proposed amendment creates a new appropriative water regime focused on the "public control of waters" by eliminating the "unappropriated" and "natural stream" limitations of the existing legal framework, and replacing them with a comprehensive "dominant water estate" controlled by the public. Proposed subsection (2) necessarily and properly relates to the doctrine created in proposed subsection (1) because subsection (2) grants appropriators a usufructory property right in the publicly-controlled water, while also subordinating that right of use to the dominant public interest by requiring appropriators to return used water unimpaired to the public.

¶ 16 Additionally, proposed subsection (3) necessarily and properly relates to the "public control of waters" because it limits appropriative uses to those that advance "the common good." Proposed subsections (4) and (5) describe the necessary implementation and enforcement details of the publicly-controlled water regime by requiring the state govern-

ment to "steward" the "public's rights and interests" in "its water estate," and by granting citizens standing to compel the government to fulfill these stewardship duties. Finally, proposed subsection (6) necessarily and properly allows the legislature to create a statutory body of law to supplement the new constitutional water requirements, just as the current water statutes necessarily supplement the existing constitutional provisions.

¶ 17 As the Title Board correctly found, Initiative 45 "only modifies the existing rights and interests in water between private individuals and the public, ... it does not alter the long-recognized scope of the subject." The proposal's provisions are dependent upon and connected to each other because they define the purpose of the measure, describe the broadened scope of the public's control over Colorado's water resources, and outline how to implement and enforce this dominant public water estate. *See In re Proposed Initiative 2001–02 No. 43*, 46 P.3d at 441. As such, like "the public's interest in state waters," "public control of waters" is "sufficiently narrow and sufficiently connected" with all of the proposed initiative's provisions to satisfy the single subject rule. *See In re Proposed Initiative 1996–6*, 917 P.2d at 1278–81.

¶ 18 Unlike "water" alone, "public control of waters" is not an "overarching theme" employed by Initiative 45's proponents to impermissibly encompass separate and unconnected purposes. *See Pub. Rights in Waters II*, 898 P.2d at 1080. Rather, "public control of waters" describes the single subject of the proposed amendment because, as described above, the proposed subsections necessarily and properly relate to one another by together creating a new water appropriation doctrine centered on the concept of a dominant public water estate.

¶ 19 Further, Initiative 45 does not trigger either of the two "dangers" of omnibus initiatives. *See In re Proposed Initiative 2001–02 No. 43*, 46 P.3d at 442–43. First, the propo-

nents do not meld unrelated subjects together to garner support for Initiative 45 from various factions of the electorate. *Id.; see* § 1–40–106.5(1)(e)(I). Instead, Initiative 45 is a cohesive proposal to amend the state constitution to create a new water regime focused on the "public control of waters." While Initiative 45 indeed involves a number of different provisions, its discrete subsections are necessarily and properly connected, rather than disconnected or incongruous, because they all relate to the same revised legal framework. *See Pub. Rights in Waters II*, 898 P.2d at 1079.

¶ 20 Initiative 45 also will not lead to the "voter surprise and fraud occasioned by the inadvertent passage of a surreptitious provision 'coiled up in the folds' of a complex initiative." *In re Proposed Initiative 2001–02 No. 43*, 46 P.3d at 442; *see* § 1–40–106.5(1)(e)(II). Our review of the proposal's plain language does not reveal any embedded provisions that would lead to voter surprise or fraud. *In re Proposed Initiative 2001–02 No. 43*, 46 P.3d at 442. Rather, the plain language of the measure unambiguously expands the public's control over all of the state's water resources, subordinates appropriative rights to the public interest, and implements and enforces the publicly-controlled regime by way of state government stewardship. As such, voters would not be surprised to learn that by voting for Initiative 45, they would be voting to alter the existing water regime to prioritize the public control of water in Colorado. Initiative 45 contains a single subject.[2]

### B. Clear Title

#### 1. Clear Title Requirement

■ ¶ 21 An initiative's single subject must be clearly expressed in its title. Colo. Const. art. V, § 1(5.5); *see In re Proposed Initiative 2009–2010 No. 45*, 234 P.3d at 647–48. A sufficiently clear title will "enable the electorate, whether familiar or unfamiliar

---

2. Kemper argues that, if adopted, Initiative 45 would so drastically alter the landscape of Colorado water law that it could not possibly contain a single subject. We again emphasize that our limited role in this process prohibits us from opining on how Initiative 45 might operate if

applied. *In re Proposed Initiative 2001–02 No. 43*, 46 P.3d at 443. We therefore refrain from analyzing the merits and potential effects of Initiative 45, as Kemper suggests, and instead confine our single subject review to the plain language of the proposed amendment.

with the subject matter of a particular proposal, to determine intelligently whether to support or oppose such proposal." *In re Proposed Initiative 2009–2010 No. 45*, 234 P.3d at 648; *see also* § 1–40–106(3)(b).

¶ 22 In setting a title, the Title Board "shall consider the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a 'yes' or 'no' vote will be unclear." § 1–40–106(3)(b). The Title Board need not set the "best possible" title; rather, the title must fairly reflect the proposed initiative such that voters "will not be misled into support for or against a proposition by reason of the words employed by the [Title] Board." *In re Proposed Initiative 2009–2010 No. 45*, 234 P.3d at 648. This Court affords the Title Board great deference in the exercise of its drafting authority. *Id.* We will only reverse the Title Board's decision if the titles are "insufficient, unfair, or misleading." *Id.* As we did with the text of the initiative, we accord the language of the Titles their plain meaning during our review. *See, e.g., In re 2007–2008, No. 17*, 172 P.3d at 874.

### 2. The Titles Satisfy the Clear Title Requirement

¶ 23 The Titles satisfy the clear title requirement because they fairly reflect the true intent and meaning of Initiative 45, and clearly express the single subject of the proposed measure. *See* Colo. Const. art. V, § 1(5.5); § 1–40–106(3)(b). The Titles first expressly state the single subject of Initiative 45 by describing the proposal as "[a]n amendment to the Colorado constitution concerning *public control of water*." (Emphasis added). They then summarize how proposed subsections (2) through (6) of the proposal relate to this subject, and thereby reflect the true intent and meaning of the measure.

¶ 24 The Title Board employed sufficiently clear language in setting the Titles to allow the electorate to "determine intelligently whether to support or oppose" Initiative 45, even without familiarity with water law principles. *See In re Proposed Initiative 2009–2010 No. 45*, 234 P.3d at 648; *see also* § 1–

40–106(3)(b). Although the Titles necessarily contain several terms of art due to the technical nature of Colorado water law, they also summarize how Initiative 45 will revise the state constitution in sufficiently plain language to allow voters to understand the purpose and substance of the proposal. Voters will not be misled into supporting or rejecting Initiative 45 due to the words employed by the Title Board because a "yes" vote will plainly expand public control over the state's water, while a "no" vote will unquestionably reject the proposal's revisions to the existing constitutional framework. Thus, the Titles are not misleading, and fairly reflect the purpose and substance of Initiative 45 and its single subject. *See* § 1–40–106(3)(b). We therefore defer to the Title Board and affirm its designation of the Titles.

### III. Conclusion

¶ 25 We hold that Initiative 45 contains a single subject. We also hold that the Titles fairly reflect the true intent and meaning of the proposed measure. We therefore affirm the Title Board.

Justice HOBBS dissents.

### APPENDIX—Initiative 45 and Titles

Initiative to Amend ARTICLE XVI, Section 6, of the Colorado Constitution

Be it Enacted by the People of the State of Colorado,

In the constitution of the state of Colorado, **amend** section 6 of article XVI as follows:

Section 6. Diverting ~~unappropriated water—priority preferred uses~~ LIMITATIONS. (I) The right to divert ~~the unappropriated waters of~~ any ~~natural stream~~ WATER WITHIN THE STATE OF COLORADO to beneficial uses shall never be denied, BUT MAY BE LIMITED, OR CURTAILED, SO AS TO PROTECT NATURAL ELEMENTS OF THE PUBLIC'S DOMINANT WATER ESTATE BY HOLDING UNLAWFUL ANY USUFRUCT USE OF WATER CAUSING IRREPARABLE HARM TO THE PUBLIC'S ESTATE. Priority of appropriation shall give the better right as between those using the water for the same purpose; but when the waters ~~of any~~

natural stream are not sufficient for the service of all those desiring the use of the same, those using the water for domestic purposes shall have the preference over those claiming for any other purpose, and those using the water for agricultural purposes shall have preference over those using the same for manufacturing purposes.

(2) THE USE OF WATER IS A USUFRUCT PROPERTY RIGHT, GRANTED BY THE PUBLIC TO WATER USERS, THAT SHALL REQUIRE THE WATER USE APPROPRIATOR TO RETURN WATER UNIMPAIRED TO THE PUBLIC, AFTER USE, SO AS TO PROTECT THE NATURAL ENVIRONMENT AND THE PUBLIC'S USE AND ENJOYMENT OF WATERS.

(3) THE COLORADO DOCTRINE OF APPROPRIATION ACKNOWLEDGES THAT THE PUBLIC CONFERS THE PRIVILEGE, BY GRANT, FOR THE USE OF ITS WATER, AND THE DIVERSION OF THE SAME, TO ANY APPROPRIATOR FOR THE COMMON GOOD.

(4) ENFORCEMENT AND IMPLEMENTATION OF THIS SECTION THAT CONFERS, BY GRANT, THE USE OF THE PUBLIC'S WATER TO USERS AND THAT STIPULATES THAT USES OF WATER SHALL BE PROTECTIVE OF THE PUBLIC'S RIGHTS AND INTERESTS, ARE MANDATED TO THE EXECUTIVE, LEGISLATIVE, AND JUDICIAL BRANCHES OF COLORADO STATE GOVERNMENT TO ACT, AS STEWARDS, TO PROTECT AND ENFORCE THE PUBLIC'S INTERESTS IN ITS WATER ESTATE.

(5) ANY CITIZEN OF THE STATE OF COLORADO SHALL HAVE STANDING IN JUDICIAL ACTIONS SEEKING TO COMPEL THE STATE OF COLORADO TO ENFORCE THE PROVISIONS OF THIS SECTION.

(6) Provisions of this section are self-enacting and self-executing, but laws may be enacted: supplementary to, and in pursuance of, but not contrary to, provisions of this section.

**The title as designated and fixed by the Board is as follows:**

An amendment to the Colorado constitution concerning public control of water, and, in connection therewith, allowing appropriated water rights to be limited or curtailed by prohibiting any use of water that would irreparably harm the public ownership interest in water; expanding the right to appropriate water for benefi-

cial use to all water within Colorado, including nontributary groundwater and not limited to unappropriated water, subject to the public ownership interest; requiring water users to return water unimpaired after use to the public so as to protect the natural environment and the use and enjoyment of water by the public; requiring state government to act as steward of and to protect, enforce, and implement the public ownership interest; and allowing any Colorado citizen to sue to enforce the amendment.

**The ballot title and submission clause as designated and fixed by the Board is as follows:**

Shall there be an amendment to the Colorado constitution concerning public control of water, and, in connection therewith, allowing appropriated water rights to be limited or curtailed by prohibiting any use of water that would irreparably harm the public ownership interest in water; expanding the right to appropriate water for beneficial use to all water within Colorado, including nontributary groundwater and not limited to unappropriated water, subject to the public ownership interest; requiring water users to return water unimpaired after use to the public so as to protect the natural environment and the use and enjoyment of water by the public; requiring state government to act as steward of and to protect, enforce, and implement the public ownership interest; and allowing any Colorado citizen to sue to enforce the amendment?

Justice HOBBS, dissenting.

¶ 26 I respectfully dissent. In my view, Initiative 2011–12 # 45 relates to more than one subject and it has at least two distinct and separate purposes that are not dependent upon or connected with each other. Accordingly, under our precedent in *Waters II*, we should hold that the Title Board erred in setting the Title and Ballot Title and Submission Clause for this initiative and remand the case to the Board with directions to strike them and return the initiative to its proponents. *In re Title, Ballot Title, Submission Clause & Summary Adopted April 5, 1995,*

by the Title Board Pertaining to a Proposed Initiative "Public Rights in Waters II ", 898 P.2d 1076, 1080 (Colo.1995) (Waters II).

## I.

¶ 27 An initiative that joins multiple subjects poses the danger of voter surprise and fraud occasioned by the inadvertent passage of surreptitious provisions coiled up in the folds of a complex initiative. In re Title, Ballot Title & Submission Clause, for 2007– 2008, # 17, 172 P.3d 871, 875 (Colo.2007) (In re 2007–2008, # 17). Grouping the provisions of a proposed initiative under a broad concept that potentially misleads voters will not satisfy the single subject requirement. In re Proposed Initiative 1996–4, 916 P.2d 528, 532 (Colo.1996). Multiple provisions fall under a single subject only if they have a "necessary and proper relationship." In re Title, Ballot Title & Submission Clause, Summary Clause for 1997–1998 No. 74, 962 P.2d 927, 929 (Colo.1998).

¶ 28 For initiatives seeking to repeal constitutional provisions, we examine the underlying constitutional provision in order to determine whether the repealing initiative contains a single subject. In re Proposed Initiative 1996–4, 916 P.2d 528, 533 (Colo. 1996). If a constitutional provision contains multiple subjects and an initiative proposes to repeal the provision, then the initiative contains multiple subjects. Id.

¶ 29 "[I]n order to pass the single-subject test, the subject of the initiative should be capable of being clearly expressed in the initiative's title." In re Title, Ballot Title, Submission Clause, Summary for 2005–2006 No. 73, 135 P.3d 736, 738 (Colo.2006).

It is our role to "consider whether the titles, summary, and submission clause reflect the intent of the amendment." In re Proposed Initiative on Transfer of Real Estate to Amend Colorado Constitution by Adding a Section 9 to Article XVIII, 200 Colo. 40, 43, 611 P.2d 981, 983 (1980). We reverse the Board's action in preparing them "if they contain a material and significant omission, misstatement, or misrepresentation." In re Title, Ballot Title & Submission Clause & Summary for 1997–98 No. 62, 961 P.2d 1077, 1082 (Colo.1998) (emphasis added). A title is unlawfully misleading if "voters … could construe the titles" in a way incorrectly representing the text of the initiative. In re Title, Ballot Title & Submission Clause & Summary for 1999–2000 No. 215, 3 P.3d 11, 16 (Colo.2000). We reject titles if they "create confusion and are misleading because they do not sufficiently inform the voters" of important aspects of the initiative. In re Title, Ballot Title & Submission Clause for Proposed Initiatives 2001–2002 No. 21 & No. 22 ("English Language Educ."), 44 P.3d 213, 221 (Colo.2002).

¶ 30 We must ensure that the Board's titles and summary enable "informed voter choice." In re Title, Ballot Title, Submission Clause, Summary for 1999–2000 No.29, 972 P.2d 257, 266 (Colo.1999). The titles and summary must "convey to voters the initiative's likely impact." In re Title, Ballot Title & Submission Clause & Summary for 1999– 2000 No. 37, 977 P.2d 845, 846 (Colo.1999). They must protect against "public confusion." In re Title, Ballot Title & Submission Clause & Summary for 1999–2000 No. 25, 974 P.2d 458, 465 (Colo.1999). They must "enable the electorate, whether familiar or unfamiliar with the subject matter of a particular proposal, to determine intelligently whether to support or oppose such a proposal." In re Proposed Election Reform Amendment, 852 P.2d 28, 33 (Colo.1993).

¶ 31 The Board must "avoid titles for which the general understanding of a 'yes' or 'no' vote will be unclear." In re Title, Ballot Title & Submission Clause & Summary Approved April 6, 1994, & April 20, 1994, for the Proposed Initiative Concerning "Auto. Ins. Coverage", 877 P.2d 853, 855 (Colo.1994).

¶ 32 Just as "water" was too broad a theme in Waters II, 898 P.2d at 1080, to unite multiple subjects into a single subject, this initiative grouped by the Title Board as "public control of water" fails, in my view, to meet the single subject requirements of article V, section 1(5.5) of the Colorado Constitution and the Title Board's enabling statute, section 1–40–106.5(1)(a), C.R.S. (2011).

## II.

¶ 33 We have a duty to determine whether a proposed initiative the Title Board has approved for the ballot contains cleverly concealed multiple purposes under a seductively-stated broad title. *In re 2007–2008, # 17,* 172 P.3d at 875; *see also In re Title, Ballot Title & Submission Clause for 2009–2010 # 91,* 235 P.3d 1071, 1076 (Colo.2010). Here, the initiative states that its purpose is "to protect natural elements of the public's dominant water estate by holding unlawful any usufruct use of water causing irreparable harm to the public's estate." To that end, it requires all water use appropriators "to return water unimpaired to the public, after use, so as to protect the natural environment and the public's use and enjoyment of waters."

¶ 34 While those provisions may appear to constitute one subject, i.e. whatever the words "public's dominant water estate" may mean, the initiative also deletes a fundamental provision of section 6 of article XVI of the Colorado Constitution: the provision in effect since 1876 that appropriation of the public's water resource acts upon "unappropriated waters of any natural stream."[1] This deletion would subject "any water within the State of Colorado" to the appropriation system. This would include non-tributary groundwater, the allocation of which is currently within the plenary power of the General Assembly. *See Colorado v. Sw. Colo. Water Conservation Dist.,* 671 P.2d 1294, 1319 (Colo.1983). The General Assembly has employed its plenary authority to provide for the vesting of non-tributary groundwater in the overlying landowner. *See Bayou Land Co. v. Talley,* 924 P.2d 136, 148–49 (Colo. 1996). Further, the deletion of the words "unappropriated waters" allows the appropri-

ation of already appropriated water in order "to protect the natural environment and the public's use and enjoyment of waters."

¶ 35 In addition, the requirement that water be returned to the stream "unimpaired" would radically transform Colorado into a riparian water law state, as the basis of riparian water law is that water use may cause only a minimal impact upon quality and quantity. *See Tyler v. Wilkinson,* 24 F.Cas. 472, 474 (C.C.D.R.I.1827) (No. 14,312); *Pyle v. Gilbert,* 245 Ga. 403, 265 S.E.2d 584, 587 (1980) (enunciating the modified riparian reasonable use doctrine). In *United States v. Gerlach Live Stock Co.,* the United States Supreme Court explained that the common law riparian doctrine, based on the idea that running waters were "common to all and property of none," developed "where lands were amply watered by rainfall." 339 U.S. 725, 744–45, 70 S.Ct. 955, 94 L.Ed. 1231 (1950). Land, not water, was the primary natural asset in these areas, so water access became a right "annexed to the shore." *Id.* at 745, 70 S.Ct. 955. Each riparian right owner faced strict limits in how he or she could use the stream water, as each downstream user had "the right to have the water flow down to him in its natural volume and channels *unimpaired* in quality." *Id.* (emphasis added).

¶ 36 This doctrine, also called the natural flow theory, "was a logical rule at a time when the primary use of water was to turn mill wheels because it insured that all mill sites would have equal access to necessary power."[2] A. Dan Tarlock, *Law of Water Rights and Resources* § 3.12[1] (1989). But the rule was "inefficient because all but the last riparian on the stream must let the full flow of the stream drain to the sea." *Id.*

---

1. Initiative # 45 would amend Colorado Constitution article XVI, § 6, by amending the first sentence of the section and adding subsections (2)-(6). The amendment to the first sentence reads as follows:

    The right to divert the ~~unappropriated waters of~~ any ~~natural stream~~ WATER WITHIN THE STATE OF COLORADO to beneficial uses shall never be denied, BUT MAY BE LIMITED, OR CURTAILED, SO AS TO PROTECT NATURAL ELEMENTS OF THE PUBLIC'S DOMINANT WATER ESTATE BY HOLDING UNLAWFUL ANY USUFRUCT USE OF

WATER CAUSING IRREPARABLE HARM TO THE PUBLIC'S ESTATE.

2. In a region of water scarcity, however, a riparian doctrine would allow landowners to monopolize water resources. It was to promote distributive justice, and not to prioritize private over common property, that Coloradans adopted the Colorado doctrine. David B. Schorr, *Appropriation as Agrarianism: Distributive Justice in the Creation of Property Rights,* 32 Ecology L.Q. 3, 4 (2005).

¶ 37 Were Colorado to adopt such a rule, of course, the full flow of our streams would drain not to the sea but to the reservoirs, fields, and cities of our neighboring states. We thought the U.S. Supreme Court put this possibility to rest in *Kansas v. Colorado,* 206 U.S. 46, 27 S.Ct. 655, 51 L.Ed. 956 (1907). There, Kansas sought to enjoin Colorado diversions from the Arkansas River, under the theory that Kansans were entitled to the river's unimpaired flow. 206 U.S. at 48, 27 S.Ct. 655. The Court held that Kansas was not entitled to the whole of the river's flow but only to an "equitable apportionment of benefits between the two states resulting from the flow of the river," as determined by the Court. *Id.* at 118, 27 S.Ct. 655. Initiative # 45 would in effect overturn this decision.

¶ 38 Thus, three subjects are concealed within the folds of this complex initiative. Any one of these subjects might lead a voter to vote for the initiative even though the voter does not favor one or more of the other subjects. This is precisely the logrolling dilemma that the voters intended to avoid when they adopted the single subject requirements of article V, section 1(5.5) of the Colorado Constitution. *In re Title, Ballot Title & Submission Clause for 2009–2010 # 91,* 235 P.3d 1071, 1079 (Colo.2010); *In re Title, Ballot Title & Submission Clause for 2009–2010, # 24,* 218 P.3d 350, 353 (Colo. 2009). It also violates the requirements that an initiative must not potentially mislead voters, that its title must not misrepresent or insufficiently inform voters so as to create confusion, and that it convey the initiative's likely impact so as to enable voter choice.

¶ 39 First, Initiative 2011–12 # 45 would subordinate all existing water rights in Colorado created over the past 150 years to the newly created "public's dominant water estate" and hold "unlawful any usufruct use of water causing irreparable harm to the public's estate" in order "to protect the natural environment and the public's use and enjoyment of waters." This provision would create a super water right for such purposes. Under existing Colorado law environmental and recreational uses are currently subject to appropriation in priority by the Colorado Water Conservation Board for instream flow and lake level water rights under section 37–92–102(3), C.R.S. (2011), and by local governmental entities for recreational in-channel water rights under sections 37–92–103(10.3), 37–92–102(6)(b), and 37–92–305(13), C.R.S. (2011).

¶ 40 Second, Initiative 2011–12 # 45 would allow non-tributary groundwater to be appropriated by anyone without the consent of the overlying landowner.

¶ 41 Third, Initiative 2011–12 # 45 would impose riparian water law upon the State of Colorado and upon already appropriated water rights, by requiring that the appropriator must return the water to the steam unimpaired.

¶ 42 These three subject matters separately and together propose to drop what amounts to a nuclear bomb on Colorado water rights. Masquerading as a measure to protect the public's control of water, it would prevent farmers, cities, families and businesses from making beneficial use of water rights that have vested in them over the past 150 years under Colorado's statutes and Constitution. It would deprive Colorado of its interstate allocation of waters of the Platte, Arkansas, Rio Grande and Colorado Rivers by imposing a predominantly non-consumptive water regimen upon the State and its water users, resulting in the free flow of waters across our boundaries for the use of others, devastating Colorado's economy and way of life.

¶ 43 Initiative 2011–12 # 45 and the subject the Title Board identified in approving it—"public control of water"—can cause voter surprise and fraud by the inadvertent passage of surreptitious provisions coiled up in the folds of a complex initiative. The title is particularly misleading because Colorado exercises a high degree of public control of water through the prior appropriation system itself, curtailing junior uses to senior uses in order of priority during short supply. Indeed, the value of a water right resides in its relative priority vis-à-vis all other water rights. *See Navajo Dev. Co. v. Sanderson,* 655 P.2d 1374, 1379 (Colo.1982). Enforcement of the priority system makes a market in changes of water rights and lease water

possible, adapting senior water right priorities to different uses, including environmental uses, while retaining the beneficial historical consumptive use allocation perfected under the original appropriation. Initiative 2011–12 # 45 would destroy the water market by rendering reliance on Colorado water rights insecure and unenforceable.

¶ 44 The title also fails to communicate the impact of "requiring water users to return water unimpaired"—converting Colorado to a riparian water rights system. *See In re Title, Ballot Title & Submission Clause for Proposed Initiatives 2001–2002 No. 21 & No. 22* ("*English Language Educ.*"), 44 P.3d at 221 (requiring the Title Board to "sufficiently inform the voters" of important aspects of the initiative). Voters are much more likely to construe this language as a general requirement that water users comply with water quality laws.

### III.

¶ 45 In my view, we have a duty under article V, section 1(5.5) of the Colorado Constitution and the Title Board's enabling statute, section 1–40–106.5(1)(a), to reverse the Title Board's action in setting the title for this initiative. Accordingly, I respectfully dissent.