2014 CO 53

In the MATTER OF the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE FOR 2013–2014 #129 ("Definition of 'Fee' ")

Anthony Milo, Petitioner,

v.

Peter Coulter and Lisa Brumfiel, Respondents,

and

Suzanne Staiert, Daniel Domenico, and Jason Gelender, Title Board.

Supreme Court Case No. 14SA135

Supreme Court of Colorado.

June 23, 2014

Attorneys for Petitioner: Foster Graham Milstein & Calisher, LLP Chip G. Schoneberger Denver, Colorado

Peter Coulter, Pro Se Morrison, Colorado

Lisa Brumfiel, Pro Se Aurora, Colorado

Attorneys for Ballot Title Board: John W. Suthers, Attorney General Kathryn A. Starnella, Assistant Attorney General Denver, Colorado

JUSTICE HOOD delivered the Opinion of the Court.

¶ 1 This original proceeding requires us to review the Title Board's action setting the title, ballot title and submission clause for Initiative 2013-2014 # 129 ("Initiative # 129").[1] Initiative # 129 seeks to amend the state constitution to add a provision defining "fee" as a "voluntarily incurred governmental charge in exchange for a specific benefit conferred on the payer."

¶ 2 We hold that Initiative # 129 contains a single subject: the definition of a "fee." We also hold that the title clearly expresses Initiative # 129's single subject. We thus affirm the action of the Title Board.

## I. Background

¶ 3 Proponents Peter Coulter and Lisa Brumfiel proposed Initiative # 129 to amend article X, section 20 of the Colorado Constitution, commonly known as the Taxpayer's Bill of Rights ("TABOR"). Initiative # 129 seeks to amend TABOR to define the term "fee" and differentiate it from a tax:

The official definition of "fee" as used in the Colorado Constitution, Colorado Revised Statutes, Codes, Directives, and all

Public Colorado Legal Documets [sic] is as follows:

A fee is a voluntarily incurred governmental charge in exchange for a specific benefit conferred on the payer, which fee should reasonably approximate the payer's fair share of the costs incurred by the government in providing said specific benefit.

Ancillary and/or extraneous benefits, as those terms are defined by Blacks [sic] Law Dictionary, of any fee shall not be considered in determining the value of said fee.

¶ 4 Initiative # 129 then states that it "shall supersede conflicting constitutional, state statutory, court findings of fact, local charter, ordinance, or resolution, and other state and local provisions." Its purpose is to "specifically supersede the Colorado Supreme Courts [sic] findings of fact in *Barber vs. Ritter*." [2]

¶ 5 Proponents submitted Initiative # 129 to the Secretary of State. The Title Board held a hearing and set title in accordance with section 1-40-106(1), C.R.S. (2013). The title mirrored Initiative # 129's definition of "fee," and the ballot title and submission clause made clear that Initiative # 129 was seeking to amend the Colorado Constitution.

¶ 6 Petitioner Anthony Milo filed a motion for rehearing, arguing that Initiative # 129 contained multiple subjects. In the alternative, he contended that its title was misleading. After a hearing, the Title Board concluded that Initiative # 129 contained a single subject and its title was clear.

¶ 7 Petitioner now seeks review of the Title Board's actions under section 1-40-107(2), C.R.S. (2013).

## II. Standard of Review

¶ 8 Our role in reviewing Title Board actions is limited. We employ all

---

1. Initiative # 129 and the title are attached as an appendix.

2. In *Barber v. Ritter*, 196 P.3d 238 (Colo.2008), we held "that a charge is a 'fee,' and not a 'tax,' when the express language of the charge's enabling legislation explicitly contemplates that its

primary purpose is to defray the cost of services provided to those charged." *Id.* at 250. We left open the possibility that, despite a statutory label of "fee," a charge may be a "tax" if it "is unreasonably in excess of the cost of services the charge is designed to defray." *Id.* at 250 n. 15.

legitimate presumptions in favor of the propriety of the Title Board's actions and will overturn its finding that an initiative contains a single subject only in a clear case. *In re Title, Ballot Title & Submission Clause for 2011–2012 # 3*, 2012 CO 25, ¶ 6, 274 P.3d 562, 565; *In re Title, Ballot Title & Submission Clause for 2009–2010 # 45*, 234 P.3d 642, 645 (Colo.2010). We liberally construe the single-subject requirement to "avoid unduly restricting the initiative process." *In re Title, Ballot Title & Submission Clause for 2009–2010 # 24*, 218 P.3d 350, 353 (Colo.2009).

¶ 9 In addition, the Title Board has considerable discretion to set the title, and the ballot title and submission clause. *In re Title, Ballot Title & Submission Clause, & Summary Pertaining to the Proposed Initiative on Parental Choice in Educ.*, 917 P.2d 292, 294 (Colo.1996). We will reverse the Title Board's decision if the title is insufficient, unfair, or misleading. *In re # 45*, 234 P.3d at 648.

¶ 10 Our limited role in this process prohibits us from addressing the merits of a proposed initiative or suggesting how an initiative might be applied if enacted. *In re Title, Ballot Title & Submission Clause for Proposed Initiative 2001–2002 # 43*, 46 P.3d 438, 443 (Colo.2002). Although our role is limited, we "examine sufficiently an initiative's central theme to determine whether it contains hidden purposes under a broad theme." *In re Title, Ballot Title & Submission Clause for 2007–2008 # 17*, 172 P.3d 871, 875 (Colo.2007).

### III. Analysis

¶ 11 Petitioner argues that Initiative # 129 contains a "virtually limitless" number of unrelated subjects because its definition of "fee" is broadly applicable. He notes that the definition will apply in constitutional, statutory, and common law contexts, as well as to "all public Colorado legal documents." He also argues that the title is misleading because it does not clearly express Initiative # 129's "overwhelming breadth." Proponents counter that the breadth of Initiative # 129 is not at issue; the only issue is whether it contains a single subject. And although potentially broad in application, they argue

that Initiative # 129 contains a single subject—the definition of a "fee"—and that the title clearly expresses that subject.

¶ 12 We first address whether Initiative # 129 contains a single subject and conclude that it does. Next, we discuss the clear title requirement and find that the title is clear.

### A. Initiative # 129 Contains a Single Subject

¶ 13 The Colorado Constitution prohibits initiatives "containing more than one subject." Colo. Const. art. V, § 1(5.5); *see also* § 1–40–106.5(1)(a), C.R.S. (2013) (requiring that proposed initiatives "be limited to a single subject").

¶ 14 This single-subject requirement serves two purposes: (1) it ensures that the initiative "depends upon its own merits for passage"; and (2) it "protects against fraud and surprise occasioned by the inadvertent passage of a surreptitious provision 'coiled up in the folds' of a complex bill." *In re Title & Ballot Title & Submission Clause for 2005–2006 # 55*, 138 P.3d 273, 277 (Colo.2006) (quoting *In re # 43*, 46 P.3d at 440). To these ends, an initiative may not group "distinct purposes under a broad theme" to circumvent the single-subject requirement, nor can it "hide purposes unrelated to the [i]nitiative's central theme" to gain passage of a hidden provision. *Id.* at 277–78.

¶ 15 An initiative thus violates the single-subject requirement "when it (1) relates to more than one subject and (2) has at least two distinct and separate purposes." *In re Title, Ballot Title & Submission Clause for 2007–2008 # 61*, 184 P.3d 747, 750 (Colo.2008). By contrast, a proposed initiative that "tends to effect or carry out one general objective or purpose presents only one subject." *In re Title, Ballot Title & Submission Clause, & Summary for 1999–2000 # 25*, 974 P.2d 458, 463 (Colo.1999). The "provisions necessary to effectuate the purpose of the measure are properly included within its text." *In re Title, Ballot Title & Submission Clause, & Summary for 1999–2000 # 256*, 12 P.3d 246, 253 (Colo.2000). But they "must be 'necessarily and properly connected' rather

than 'disconnected or incongruous.' " *In re Title, Ballot Title, Submission Clause for 2011–2012 # 3*, 2012 CO 25, ¶ 9, 274 P.3d 562, 565 (2012).

¶ 16 Initiative # 129 seeks to amend TABOR to add a provision defining "fee" and then apply that definition to a wide range of contexts, including "the Colorado Constitution, Colorado Revised Statutes, Codes, Directives and all public Colorado legal documets [sic]." Despite that definition's broad applicability, its breadth, by itself, does not necessarily violate the single-subject requirement. *See In re # 256*, 12 P.3d at 254 (holding that an initiative does not violate the single-subject requirement simply because it covers a broad subject). Instead, we must determine whether the matters encompassed by the initiative are necessarily and properly connected to each other rather than disconnected or incongruous. *See In re # 3*, ¶ 9, 274 P.3d at 565.

¶ 17 After defining "fee," Initiative # 129 provides the circumstances under which that definition will apply. Although that definition applies broadly, its breadth does not necessarily make its provisions disconnected or incongruous. To the contrary, Initiative # 129's provisions are necessarily and properly connected with each other: it defines the term "fee" and then renders uniform that definition throughout Colorado law. In other words, Initiative # 129 "tends to effect or carry out one general objective or purpose"—that is, changing the definition of "fee." *See In re # 256*, 12 P.3d at 253–54.

¶ 18 Petitioner also appears to argue that Initiative # 129's breadth is simply an effort to group "distinct purposes under a broad theme." He does not provide concrete examples of Initiative # 129's distinct purposes, however, but instead argues that the contexts to which its definition will apply— "public Colorado legal documents" and "court findings of fact," for instance—are so vague that its effect is essentially unknowable. But we do not review an initiative for artful drafting, nor can we address the merits of a proposed initiative or suggest how it might be applied if enacted. *See In re # 43*, 46 P.3d at 443. The mere fact that an initiative may change the law does not mean that it

violates the single-subject requirement, even if it "makes policy choices that are not inevitably interconnected." *See In re # 256*, 12 P.3d at 254. In any event, we cannot consider "[t]he effects this measure could have on Colorado ... law if adopted by voters." Those concerns, however valid, "are irrelevant to our review of whether [the proposed initiative] and its Titles contain a single subject." *In re # 3*, ¶ 20 n. 2, 274 P.3d at 568 n. 2.

¶ 19 We hold that Initiative # 129 contains a single subject: the definition of a "fee."

### B. The Title Clearly Expresses Initiative # 129's Single Subject

¶ 20 Petitioner argues that the title is misleading because it is silent about Initiative # 129's broad application to Colorado constitutional, statutory, and common law, as well as to "all public Colorado legal documents."

¶ 21 The Colorado Constitution dictates that an initiative's single subject shall be clearly expressed in its title. *See* Colo. Const. art. V, § 1(5.5); *In re Title, Ballot Title & Submission Clause for 2011–2012 # 45*, 2012 CO 26, ¶ 21, 274 P.3d 576, 581.

¶ 22 When setting a title, the Title Board "shall consider the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a 'yes/for' or 'no/against' vote will be unclear." § 1–40–106(3)(b), C.R.S. (2013). The title "shall correctly and fairly express the true intent and meaning" of the initiative. *Id.* The title should enable the electorate, whether familiar or unfamiliar with the subject matter of a particular proposal, to intelligently determine whether to support or oppose such a proposal. *In re # 45*, 234 P.3d at 648.

¶ 23 When reviewing a clear title challenge, we give "great deference" to the Title Board in the exercise of its drafting authority, and we will reverse the Title Board if the title is "insufficient, unfair, or misleading." *Id.*

¶ 24 Initiative # 129 is captioned "Definition of 'Fee,' " and its title informs

prospective voters that the initiative seeks to amend the state constitution by adding that definition to it. The submission clause re-phrases the title in question form:

Shall there be an amendment to the Colorado constitution defining a "fee" as a voluntarily incurred governmental charge in exchange for a specific benefit conferred on the payer, which fee should reasonably approximate the payer's fair share of the costs incurred by the government in providing the benefit?

¶ 25 The title conveys Initiative # 129's singular purpose: to provide a uniform definition of "fee." And although the title does not list every context in which the definition of "fee" may conceivably apply, a title need not "spell out every detail of a proposal." *In re # 256*, 12 P.3d at 256. Besides, the title makes clear that the initiative is seeking to amend the Colorado Constitution, and a constitutional amendment necessarily will apply broadly and trump conflicting state or local provisions.

¶ 26 To the extent that Initiative # 129 also applies to "public Colorado legal documents," we reiterate our limited role. Unless clearly misleading, we "will not rewrite the titles to achieve the best possible statement of the proposed measure's intent." *Id.* at 255. The title is not so misleading that we feel compelled to interfere with the Title Board's choice of language. And that language fairly reflects the initiative's purpose: to provide a uniform definition of "fee."

¶ 27 We hold that the title clearly expresses Initiative # 129's single subject.

## IV. Conclusion

¶ 28 For the reasons stated, we affirm the action of the Title Board.

APPENDIX—Initiative # 129 and Title

BE IT ENACTED BY THE PEOPLE OF THE STATE OF COLORADO:

SECTION 1. IN THE CONSTITUTION OF THE STATE OF COLORADO, AMEND ARTICLE X SECTION 20 **ADD** AS FOLLOWS:

THE OFFICIAL DEFINITION OF "FEE" AS USED IN THE COLORADO CONSTITUTION, COLORADO REVISED STATUTES, CODES, DIRECTIVES AND ALL PUBLIC COLORADO LEGAL DOCUMETS IS AS FOLLOWS:

A FEE IS A VOLUNTARILY INCURRED GOVERNMENTAL CHARGE IN EXCHANGE FOR A SPECIFIC BENEFIT CONFERRED ON THE PAYER, WHICH FEE SHOULD REASONABLY APPROXIMATE THE PAYER'S FAIR SHARE OF THE COSTS INCURRED BY THE GOVERNMENT IN PROVIDING SAID SPECIFIC BENEFIT.

ANCILLARY AND/OR EXTRANEOUS BENEFITS, AS THOSE TERMS ARE DEFINED BY BLACKS LAW DICTIONARY, OF ANY FEE SHALL NOT BE CONSIDERED IN DETERMINING THE VALUE OF SAID FEE.

SELF–EXECUTING, SEVERABILITY, CONFLICTING PROVISIONS.

ALL PROVISIONS OF THIS SECTION ARE SELF–EXECUTING EXCEPT AS SPECIFIED HEREIN, ARE SEVERABLE, AND, EXCEPT WHERE OTHERWISE INDICATED IN THE TEXT, SHALL SUPERSEDE CONFLICTING CONSTITUTIONAL, STATE STATUTORY, COURT FINDINGS OF FACT, LOCAL CHARTER, ORDINANCE, OR RESOLUTION, AND OTHER STATE AND LOCAL PROVISIONS. ALL PROVISIONS OF THIS SECTION SPECIFICALLY SUPERSEDE THE COLORADO SUPREME COURTS FINDINGS OF FACT IN BARBER VS. RITTER.

EFFECTIVE DATE.

UNLESS OTHERWISE PROVIDED BY THIS SECTION, ALL PROVISIONS OF THIS SECTION SHALL BECOME EFFECTIVE UPON OFFICIAL DECLARATION OF THE VOTE HEREON BY PROCLAMATION OF THE GOVERNOR, PURSUANT TO SECTION 1(4) OF ARTICLE V.

### Ballot Title Setting Board

### Proposed Initiative 2013–2014 #129

The title as designated and fixed by the Board is as follows:

An amendment to the Colorado constitution defining a "fee" as a voluntarily incurred governmental charge in exchange for a specific benefit conferred on the payer, which fee should reasonably approximate the payer's fair share of the costs incurred by the government in providing the benefit.

The ballot title and submission clause as designated and fixed by the Board is as follows:

Shall there be an amendment to the Colorado constitution defining a "fee" as a voluntarily incurred governmental charge in exchange for a specific benefit conferred on the payer, which fee should reasonably approximate the payer's fair share of the costs incurred by the government in providing the benefit?

JUSTICE HOBBS dissents, and CHIEF JUSTICE RICE joins in the dissent.

JUSTICE HOBBS, dissenting.

¶ 29 I respectfully dissent. In my view, the Title Board erred in determining that Initiative # 129 satisfied the single-subject requirement and also in omitting salient features of the initiative in the title and submission clause. I would reverse the Title's Board actions and order the Title Board to return the initiative to its proponents.

¶ 30 Article V, section 1, subsection 5.5 of the Colorado Constitution limits the Title Board's jurisdiction to proposed initiatives containing a single subject. We will overturn an action of the Title Board when it clearly violates the constitutional single-subject requirement. *In re Proposed Initiative for 2011–2012 # 45*, 274 P.3d 576, 579–80 (Colo. 2012). We do not consider the initiative's efficacy, construction, or the future application of the initiative. *Id.* We may, however,

characterize the initiative sufficiently to enable review of the Title Board's actions. *In re Proposed Initiative for 1999–2000 # 258(A)*, 4 P.3d 1094, 1098 (Colo.2000). We begin by examining the initiative's central theme to determine whether it contains a hidden purpose under a broader theme. *In re Proposed Initiative for 2007–2008 # 17*, 172 P.3d 871, 875 (Colo.2007). If the unstated purpose(s) do not bear a sufficient relationship to the central theme of the initiative, the initiative impermissibly contains more than one distinct and separate purpose. *See In re Proposed Initiative for 2005–2006 # 55*, 138 P.3d 273, 278–79 (Colo.2006).

¶ 31 Applying these principles, I conclude that the Title Board erred in determining that Initiative # 129 complied with the single-subject requirement. Initiative # 129 impermissibly contains multiple subjects because its definition of "fee" would apply first at the time of the imposition of the fee and again later at the time fee revenue is held by a governmental entity, thus superseding *Barber v. Ritter*, 196 P.3d 238, 250 (Colo.2008) (holding that the purpose for which the charge is imposed, rather than the manner in which the monies generated by the charge are ultimately spent, determines the characterization of the charge as a fee or a tax). Indeed, the express language of Initiative # 129 states "all provisions of this section specifically supersede the Colorado Supreme Court's findings of fact in *Barber v. Ritter*." Ignoring, for argument's sake, that we do not make findings of fact, the language of Initiative # 129 clearly reflects Proponents' intent to define "fee" so that charges defined as fees can *never* later be considered taxes in the hands of the government, which is contrary to the analysis laid out in *Barber v. Ritter*.[1]

¶ 32 In *Barber v. Ritter*, we implicitly left open the possibility that a charge that is called a "fee" at the time it is imposed may later be more properly characterized as a "tax," according to the purpose for which the charge was imposed. *Id.* at 250 n. 15. Initiative # 129 would strip courts of the power to

---

1. The transcript of the hearing before the Title Board on Petitioner's petition for rehearing confirms that the Proponents' express intent in drafting Initiative 129 was to ensure that "fees" could never be later characterized as "taxes" by a court.

evaluate this distinction. A charge called a "fee" at the time of imposition would always have to be considered a "fee," even if a court later determined it was actually intended to be a tax. I thus observe that Initiative # 129 contains two unrelated subjects—defining fee at the time of imposition and precluding judicial review of the nature of the "fee" once it is in the hands of the government. There is a distinct difference between defining "fee" for the purposes of TABOR and stripping courts of the ability to conduct an independent analysis of the purpose for, and classification of, charges imposed by the government and their subsequent treatment under TABOR. Therefore, Initiative # 129 improperly contains a "hidden purpose" (precluding judicial review) under a "broad theme" (defining "fee"). *See In re # 17*, 172 P.3d at 875.

¶ 33 Perhaps even more troubling, I observe that, because Initiative # 129's definition of "fee" purports to supersede and control all "Colorado Revised Statutes, codes, directives, and all public Colorado legal documents," as well as all "court findings of fact," all local charters, all ordinances, all resolutions, and all other state and local provisions, it is impossible to comprehend the true number of subjects or purposes the initiative contains. We have held that, if the Title Board "cannot comprehend a proposed initiative sufficiently to state its single subject clearly in the title, it necessarily follows that the initiative cannot be forwarded to the voters." *In re Title, Ballot Title and Submission Clause, and Summary for 1999–2000 # 25*, 974 P.2d 458, 465 (Colo.1999).[2] "All Colorado legal documents" and "court findings of fact" are utterly ambiguous terms. Thus, Petitioner argues, it was impossible for the Title Board to fully comprehend and evaluate the number of subjects the Initiative contains and to then certify it as single-subject. I agree.

¶ 34 Petitioner correctly points out that the term "all Colorado legal documents" could potentially include such documents as real estate contracts, building permits, rental car agreements, probate and estate planning documents, franchise agreements, and employment records. The term "court findings of fact" is even more vague. Proponents' inclusion of this term appears to be targeted at precluding a court from conducting a *Barber v. Ritter* analysis, but the language of Initiative # 129 does not limit it to that particular category of "factual findings." The Initiative purports to apply to all court findings of fact, regardless of the court, the type of case, and the type of fee involved.

¶ 35 Petitioner highlights two examples of statutory fees—the reduced administrative fee for employees of non-profit organizations seeking a commercial driver's license,[3] and the cap on other administrative fees, like boiler inspection fees[4]—that would be redefined by Initiative # 129. I agree with Petitioner that "there is no logical corollary or necessary connection between wiping out the legislature's public policy choice to discount administrative fees charged to non-profit employees, while simultaneously eliminating the

---

2. In *Initiative # 25*, we overturned the Title Board's action because the Title Board failed to actually determine whether an initiative contained a single subject. In this case, the Title Board determined that Initiative # 129 contained a single subject, but it failed to address the ambiguity in the initiative's use of the terms "all public Colorado legal documents" and "court findings of fact." Without first defining these ambiguous terms, which are key to determining the applications of, and thus the number of subjects contained in, the initiative, the Title Board could not have properly determined that Initiative # 129 contained only a single subject.

3. Section 42–2–406(3)(b), C.R.S. (2013), states that

The fee for the administration of driving tests by the department shall be one hundred dol-

lars; except that the fee for the administration of such driving test to any employee or volunteer of a nonprofit organization that provides specialized transportation services for the elderly and for persons with disabilities, to any individual employed by a school district, or to any individual employed by a board of cooperative services shall not exceed forty dollars.

4. Section 9–4–109, C.R.S. (2013), states that

[Boiler inspection fees] shall not exceed the amount necessary to accumulate and maintain in the boiler inspection fund a reserve sufficient to defray the division's administrative expenses for a period of two months, and in no event shall the basic fee for an annual inspection exceed one hundred fifty dollars for an internal inspection or eighty-five dollars for an external inspection.

statutory cap on fees for boiler inspections." The word "fee" appears hundreds, if not thousands, of times in state statutes and municipal codes and regulations. The sweeping language of Initiative # 129 purports to redefine every single application of the word "fee," in every conceivable context. This, too, constitutes a hidden purpose under the broad theme of the seemingly innocuous definition of "fee" in violation of the single-subject requirement.

¶ 36 The Title Board claims—and the majority agrees—that Initiative # 129 does not violate the single-subject rule merely because the "fee" definition applies in multiple contexts. It argues that, as a definitional initiative, it may properly affect more than one other statutory provision, without mandating the conclusion that the measure contains multiple subjects. *See In re Proposed Petition to Amend TABOR No. 32*, 908 P.2d 125, 128–29 (Colo.1995) (concluding that a tax credit initiative comported with the single-subject requirement even though it applied a tax credit to more than one tax). *TABOR No. 32* is clearly distinguishable from the present case; the tax credit at issue applied to just six state or local taxes. *Id.* at 129 ("Although the Initiative applies the tax credit to more than one tax, the single purpose of the Initiative is the implementation of a tax credit. All six taxes are connected to the same tax credit and are bound by the same limitations."). Initiative # 129's "fee" definition would apply in far more than six contexts, but it is impossible to determine where and how many. Thus, the Title Board could not possibly have properly concluded that the initiative contains but a single subject.

¶ 37 It bears mentioning that Legislative Counsel identified other ambiguities in the first draft of Initiative # 129—that it did not define "ancillary and/or extraneous benefits"—and required Proponents to clarify them (which they did, by adding the reference to Black's Law Dictionary). The Title Board erred by not also requiring Proponents to clarify the terms "all Colorado public legal documents" and "court findings of fact" before making its single-subject determination. These terms are arguably more ambiguous than the term "ancillary and/or

extraneous benefits" and even more central to an analysis of whether Initiative # 129 meets the single-subject requirement. In my view, the Title Board thus failed to conduct an adequate inquiry into whether Initiative # 129 satisfied the single-subject requirement.

¶ 38 Because the Title Board did not satisfy its dual duties to both assist Proponents with implementing their right to initiate laws and to consider the potential public confusion that would result from a multiple-subject initiative, I would reverse its action. *See In re No. 25*, 974 P.2d at 468 (observing that the Board must simultaneously consider its duty to assist potential proponents in implementing their right to initiate laws and the potential public confusion that might result from misleading titles and exercise its authority in order to protect against such confusion).

¶ 39 Closely connected to the Title Board's single-subject determination is its duty to set titles that "correctly and fairly express the true intent and meaning" of the proposed initiative and "unambiguously state the principle of the provision sought to be added, amended, or repealed." § 1–40–106(3)(b), C.R.S. (2013). The purpose of ensuring that the title accurately characterizes the proposed initiative is so petition signers and voters will not be misled into supporting or opposing a measure due to the words chosen by the Title Board. *In re Proposed Initiative Under the Designation "Tax Reform"*, 797 P.2d 1283, 1288 (Colo.1990).

¶ 40 We generally will not interfere with the Board's language unless the summary is misleading or does not fairly reflect the initiative's purpose. *Id.* If the title clearly and concisely summarizes the measure's "central features," we will uphold the title. *In re Proposed Initiative for 2007–2008 # 61*, 184 P.3d 747, 752 (Colo.2008). On the other hand, if the Title Board omits reference to a central element of the measure, the title is legally deficient because voters will be misled and the title must be sent back to the Title Board. *In re Proposed Initiatives for 2001–2002 Nos. 21 & 22*, 44 P.3d 213, 217 (Colo. 2002) ("[T]itles, standing alone should be ... capable of informing the voter of the major import of the proposal ... [and] must allow

the voter to understand the effect of a yes or no vote on the measure.").

¶ 41 Initiative # 129's title and submission clause fail to advise voters of the essential characteristics of the initiative: most importantly, that it applies to and supersedes every definition of "fee" contained anywhere in the Colorado Revised Statutes; all local and state codes; all "directives"; all "public Colorado legal documents" of every nature; all court findings of fact; all local charters, ordinances, and resolutions; and all other state and local provisions. As written, the submission clause simply states "Shall there be an amendment to the Colorado constitution establishing a definition of a 'fee'...." This suggests to voters that the new definition of "fee" would only apply to the Colorado Constitution, not the countless other applications contained in the text of the initiative itself.

¶ 42 The Title Board argues that its summaries are not required to educate voters about an·initiative's intricacies and that we should disregard the fact that Initiative # 129's submission clause does not educate voters about the proposed fee definition's broad application to other areas of law and policy. In support of this argument, the Title Board asserts that "it is well established that state constitutional provisions trump any conflicting state or local provisions.... Thus, even if the proposed text for # 129 did not specify that the fee definition uniformly applied to the Colorado Constitution, Colorado Revised Statutes, Codes, Directives, and all public Colorado legal documents, the constitutional amendment would trump any conflicting state or local law, by default."

¶ 43 The Title Board's argument is both incorrect and dangerous. The Title Board's duty is to assist voters of average intelligence in understanding the key portions of an initiative. *See In re No. 25*, 974 P.2d at 469 ("When writing future titles, the connection between the title and the initiative must be so obvious as that ingenious reasoning, aided by superior rhetoric, will not be necessary to understand it. Further, such connection should be within the comprehension of voters of average intelligence." (citations omitted)). It is extremely unlikely that voters could independently infer from Initiative # 129's brief title the vast applications of the proposed "fee" definition because that language was wholly omitted from the submission clause. The Title Board erred in assuming that voters would or could independently assess the concept of constitutional preemption and come to the unlikely conclusion that Initiative # 129 applies outside the context of the state constitution. The Title Board's singular focus on the resulting *legal effect* of the initiative, rather than the accuracy of the title and submission clause itself, is contrary to its statutory duty to set a clear title that informs voters of the meaning of a yes/no vote.

¶ 44 Because the title fails to include salient features of Initiative # 129–namely, that it applies in every conceivable legal context within the state, not just in the TABOR section of the constitution—and the Title Board improperly assumed voters would somehow extrapolate from the language of the title the related constitutional preemption principles, the title is legally insufficient. Accordingly, I respectfully dissent.

I am authorized to state that Chief Justice RICE joins in the dissent.